KIRK SHIVELL, demandante y recurrido, *v.* INOCENCIA, conocida por SARA, ROSA MARÍA y MARÍA TERESA BARBER Y BOSCIO, demandadas y recurrentes; INOCENCIA, conocida por SARA BARBER Y BOSCIO, demandante y recurrida, *v.* FRANCISCA BARBER Y BOSCIO, acompañada de su esposo don ROBERTO ANNONI, y ROSA MARÍA y MARÍA TERESA BARBER Y BOSCIO, demandadas y recurrentes.

*Número:* R-64-151      *Resuelto:* 21 de mayo de 1965

*Frank Vizcarrondo Vivas* y *Pablo Defendini,* abogados de los recurrentes; *Enrique Báez García,* abogado de Inocencia, conocida por Sara Barber y Boscio; *Ildefonso Freyre,* abogado de Kirk Shivell.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Cuatro hermanas, de apellido Barber, adquirieron por herencia una finca de 63 cuerdas sita en el municipio de Cabo Rojo. La poseen por partes iguales, en condominios pro indivisos. Dichas hermanas son Inocencia, conocida por Sara, casada con Antonio Comas; Rosa María, soltera; María Teresa, casada con Franciso Silva; y Francisca, casada con Roberto Annoni. Todas son mayores de edad. (¹)

En 19 de julio de 1962, Sara, Rosa María y María Teresa firmaron ante notario un contrato titulado "PROMESA DE VENTA" en el cual, luego de identificar a los comparecientes—vendedoras y comprador—y de manifestar que las comparecientes son condueñas de una finca que allí se describe, manifestaron lo siguiente:

"—Manifiestan las tres comparecientes que dicha finca se encuentra libre de gravámenes, no pudiendo determinar al suscribir este documento si dicha finca se encuentra o no inscrita en el Registro de la Propiedad a nombre de sus causantes o de otra persona. ................................................................................................

"—Que las dueñas del indicado inmueble obtuvieron la declaratoria de herederos de sus respectivos padres Bartolo Barber, muerto en Mayagüez el 31 de diciembre de 1927 y Emilia Boscio, muerta en Mayagüez el 19 de abril de 1957, pero la notificación de la defunción al Tesorero de Puerto Rico a los efectos del pago de la contribución de herencia no ha sido tramitada.

"—Que dichas tres comparecientes han convenido en VENDER al otro compareciente de la segunda parte Mr. KIRK SHIVELL sus tres condominios, por una cuarta parte cada uno, o sea tres cuartas partes de la totalidad del inmueble, a razón de DIEZ MIL DOLARES ($10,000.00) cada condominio, o sea TREINTA MIL DOLARES ($30,000.00) los tres condominios.....

"—Que la escritura de venta de dichos tres condominios a Mr. KIRK SHIVELL No se otorgará hasta que las comparecientes de la primera parte no hayan aclarado los títulos de propiedad, esto es, (1) determinando si la finca está o no inscrita y (2) de no estarlo, tramitando el correspondiente expediente de dominio.

---

(¹) Como Inocencia es conocida por Sara y con ese nombre firmó el contrato que motivó este pleito, para simplificar la llamaremos Sara en el curso de esta opinión.

"—Todos los gastos en que se incurra para la inscripción de la finca serán por partes iguales entre los cuatro condueños, a menos que se logre la división material de la finca antes de inscribir—digo—iniciar el expediente de dominio, en cuyo caso. los gastos para la inscripción serán solamente por cuenta de las tres comparecientes. ..........................................................................................

"—Como consideración por la firma de este documento de promesa de venta, el comprador Mr. KIRK SHIVELL entrega a las vendedoras prospectivas en este acto la cantidad de QUINIENTOS DOLARES ($500.00), cuya cantidad el comprador deducirá del precio de TREINTA MIL DOLARES ($30,000.00) cuando se otorgue la escritura de venta, si la venta se efectuare. Si la venta no se efectuare por culpa del comprador, o éste se arrepintiere del negocio, perderá dicha cantidad, la que quedará a beneficio de las comparecientes de la primera parte ya que ellas han incurrido en gastos para arreglar la titulación de la propiedad. ..................................................................................................

"—El comprador prospectivo no entrará en posesión de la propiedad hasta tanto se haya otorgado la correspondiente escritura de venta y se haya determinado qué parte de la finca pertenece a las tres condueñas aquí comparecientes." .........................

Termina el contrato especificando que lo allí consignado es lo que las partes han convenido y que proceden a firmarlo. Firman el contrato Sara B. de Comas, Rosa Ma. Barber, María T. B. de Silva y Kirk Shivell.

Medio año más tarde, luego de llevarse a cabo e inscribirse un expediente de dominio sobre la finca en cuestión, de tramitarse con el Departamento de Hacienda lo relativo a la contribución de herencia, de hacerse la mensura y levantarse el plano de mensura y división de la finca y pasadas las reuniones, discusiones y vicisitudes que estos negocios de bienes raíces generan, especialmente si hay varios condueños y más especialmente si éstos son familiares entre sí, llegó el día de firmar la escritura de división de la comunidad, paso previo a la ejecución de la de compraventa entre las tres hermanas vendedoras y el comprador. En esa ocasión, al comparecer las cuatro hermanas condueñas a la oficina del Lcdo. Enrique Báez García, abogado que en representación de

las vendedoras había hecho los trabajos legales antes mencionados, Roberto Annoni (esposo de Francisca Barber) expresó que él "no permitía" que su esposa firmase. Francisca no firmó.

Para entender lo inesperado y sorpresivo de esta actitud de Annoni, además de las reuniones y discusiones que precedieron a ese día, basta con señalar que en una de esas reuniones fue el propio Annoni quién hizo al comprador Shivell las tres propuestas que se consideraron para la división física de la finca, señalando los terrenos que se adjudicarían a las tres hermanas vendedoras, Sara, Rosa María y María Teresa, y los terrenos que como participación suya retendría Francisca, su esposa. El comprador solicitó tres días para pensarlo y finalmente aceptó una de las tres proposiciones hechas por Annoni. Esta proposición consistía en dividir la finca en dos parcelas. Una parcela de 39 cuerdas se adjudicaría a las tres hermanas vendedoras y la otra, de 23 cuerdas, se adjudicaría a la señora Annoni. El comprador compraría la propiedad de las tres hermanas Sara, Rosa María y María Teresa.

Con motivo de la situación creada por la actitud de los señores Annoni se incoaron en el Tribunal Superior, Sala de Mayagüez dos pleitos. El primero, número CS-63-1367 fue radicado por el Lcdo. Báez García en representación de Sara, Rosa María y María Teresa Barber contra Francisca Barber de Annoni y en el mismo se solicitaba que se dictara sentencia decretando la división material de la finca. Este caso fue radicado en 12 de julio de 1963. Mas tarde, en 2 de agosto de 1963 Rosa María y María Teresa se unieron a la demandada, su hermana Francisca, dejando así de ser demandantes. Sara continuó como demandante. El otro caso a que hemos hecho referencia es el número CS-63-1553 radicado por los abogados Iván Reichard e Ildefonso Freyre en representación del comprador Kirk Shivell contra las tres hermanas vendedoras, sobre cumplimiento específico de contrato. Desde luego,

Shivell interesaba en dicho pleito que las tres hermanas vendedoras cumpliesen su obligación según contraída mediante el contrato de promesa de venta ejecutado en 19 de julio de 1962. El pleito de Shivell es realmente uno contra Rosa María y María Teresa porque Sara no ha cambiado de parecer y está dispuesta a firmar las escrituras de división de la finca y la de venta a Shivell.

Los dos pleitos antes mencionados fueron consolidados y la vista se celebró en diciembre de 1963. Luego de practicarse prueba extensa durante dos días el Tribunal Superior llegó, entre otras, a las siguientes conclusiones de hecho:

"4.—Se convino expresamente en dicho contrato que el comprador prospectivo señor Shivell no entraría en posesión de la propiedad hasta tanto se hubiese otorgado la correspondiente escritura de venta y se hubiese determinado qué parte de la finca pertenecía a las tres condueñas comparecientes en dicho contrato.

"5.—El Lcdo. Enrique Báez García fue contratado por las cuatro hermanas Barber para arreglar la titulación de la propiedad y obtener la inscripción de la misma en el Registro de la Propiedad, y dicho abogado quedó encargado por las tres hermanas que habían firmado el contrato de promesa de venta de llevar a cabo las gestiones necesarias para obtener la división material de la finca de manera que ellas pudieran cumplir con el contrato de vender al señor Shivell la parte dividida de la finca que correspondiera a ellas tres.

"6.—Por recomendación del Lcdo. Enrique Báez García y con el objetivo principal de poder llevar a cabo la división material de la finca, fueron utilizados por las propietarias de la finca los servicios del ingeniero civil y profesor del Colegio de Agricultura señor Eduardo Ramírez Santiago, licencia número 3,458, quien midió la totalidad de la finca y levantó un plano de la misma que fue ofrecido y admitido en evidencia y que tiene fecha de 15 de septiembre de 1962.

"7.—Siguiendo instrucciones de sus clientes, el Lcdo. Enrique Báez García radicó ante este Tribunal a nombre de las cuatro hermanas Barber y Boscio el caso civil número CS-62-1875 sobre información de dominio y obtuvo resolución aprobatoria en 19 de marzo de 1963, habiéndose inscrito dicho expediente de

dominio en el Registro de la Propiedad de San Germán en 23 de mayo de 1963 al folio 26 del tomo 159 de Cabo Rojo, finca número 4,825, inscripción primera, a virtud de copia certificada de la Resolución obtenida en la Secretaría de este Tribunal por don Roberto Annoni, esposo de doña Francisca Barber y Boscio, y presentada por el mismo señor Annoni en el Registro de la Propiedad de referencia. Los honorarios y gastos por dicho trabajo le fueron satisfechos al Lcdo. Enrique Báez García por las cuatro hermanas Barber.

"8.—Una vez inscrito el expediente de dominio, se celebró una reunión en la oficina del Lcdo. Enrique Báez García en la cual estaban el señor Comas, esposo de doña Sara Barber, el señor Annoni, esposo de doña Francisca Barber, el señor Shivell y la esposa de este último, el ingeniero señor Ramírez Santiago y el Lcdo. Enrique Báez García, y en dicha reunión el señor Annoni, en representación de su esposa doña Francisca Barber, hizo al señor Shivell tres proposiciones distintas sobre la división material de la finca, de manera que el señor Shivell adquiriera la parte dividida que le correspondiera a las tres hermanas que deseaban vender, y a la señora Barber de Annoni le correspondiera su parte dividida que no deseaba vender. . . ."

En consecuencia, el Tribunal Superior declaró con lugar ambas demandas y ordenó a las demandadas copropietarias que otorgasen la escritura de división de comunidad y a las demandadas vendedoras que otorgasen la escritura de venta de la parcela de 39 cuerdas a favor del comprador Shivell.

Las recurrentes plantean ocho errores. Los números 1, 2, 4, y 5′ impugnan la apreciación que de la prueba hizo el Tribunal Superior. Los números 6 y 7 se refieren a la interpretación del contrato de 19 de julio de 1962. El número 8 impugna la razonabilidad de la división de la finca y el tercero levanta una cuestión de mandato que más adelante discutimos.

Creemos que podemos evitar una larga exposición si tomamos, imaginariamente, el escalpelo y haciendo una incisión exponemos la raíz del tumor. Annoni desea frustrar el cumplimiento del contrato de promesa de venta firmado por

las tres hermanas en julio de 1962 porque si se vende de acuerdo con los términos de dicho contrato Shivell estaría comprando una parcela ya dividida materialmente de la finca principal y de la cual Francisca, su esposa, no sería condueña y no podría retrotraerla. Si por el contrario no se permitiese la división y Shivell comprase las cuotas indivisas de las tres hermanas vendedoras entonces Francisca podría retrotraer. Esto es el *quid* de este caso. (²)

La posición de Francisa Barber y de su esposo Roberto Annoni, a la cual se han unido las hermanas Rosa María y María Teresa, es que lo que las tres hermanas se comprometieron a vender a Shivell es su participación indivisa en la finca. En el párrafo anterior hemos explicado el porqué de esta posición. Francisca no era una de las vendedoras pero sí lo eran Rosa María y María Teresa y éstas a última hora decidieron favorecer la pretensión de Francisca. Nada lo impediría de no haber ellas contratado con Shivell en sentido contrario. La posición de Sara y de Shivell es que las vendedoras se comprometieron a vender, y el comprador se comprometió a comprar, una propiedad ya dividida de la finca principal.

■ En cuanto a los errores que impugnan la apreciación de la prueba podemos decir lo siguiente. Hemos leído los memorandos y los alegatos de las partes, la cuidadosa opinión del Juez Superior y la transcripción de evidencia, la cual consta de 234 páginas. No tenemos duda de que la prueba sostiene ampliamente la decisión del juez sentenciador y de que su apreciación de la prueba fue justiciera y razonable.

■ Tampoco se cometieron los errores que se señalan en relación con la interpretación del contrato de promesa de venta. Dicho contrato dispone que "El comprador prospectivo no entrará en posesión de la propiedad hasta tanto se haya otorgado la correspondiente escritura de venta y se haya

---

(²) V. Art. 1412 Código Civil. Cf. Art. 1020 del mismo cuerpo legal. 31 L.P.R.A. secs. 3922 y 2886 respectivamente.

determinado qué parte de la finca pertenece a las tres condueñas aquí comparecientes." En primer lugar, nótese que el contrato no dice que el comprador entrará en posesión de un derecho abstracto de condominio, sino que el contrato habla de entrar en posesión *de la propiedad*. En segundo lugar, el contrato también dice que el comprador no entrará en posesión de la propiedad hasta tanto se haya otorgado la escritura y se haya determinado *qué parte de la finca* pertenece a las tres condueñas aquí comparecientes. Esa última frase claramente no se refiere a partes indivisas porque eso ya se sabía. Las hermanas son condueñas de la finca por partes iguales. Lo que no se sabía, y para lo cual era necesario la división de la finca, era qué parte física le correspondería a las hermanas vendedoras y qué parte física le correspondería a Francisca. A eso se refirió el contrato. En tercer lugar, a la luz de la prueba, es increíble que Shivell quisiese comprar un condominio indiviso para volverse socio de Francisca o para que ésta le retrotrayese. La prueba es abundante sobre este particular. (T.E. págs. 21, 64, 76, 87–88, 92, 123–124, 228.)

Un pasaje del récord es revelador de la conducta de Annoni. Como hemos dicho antes, él mismo propuso la forma en que se dividió la finca. El récord revela que al principio Annoni no tenía el dinero para comprar la participación de las hermanas vendedoras y que él atendió muy de cerca la división que se hizo de la finca para proteger los intereses de su esposa. Annoni luego consiguió el dinero y por eso se produce el cambio de actitud en él, en Francisca su esposa, y también en Rosa María y María Teresa que más tarde se solidarizan con su hermana Francisca. Sara es la que se mantiene fiel al compromiso contraído en julio de 1962. Refiriéndose a la división de la finca Annoni declara que "Si no conseguía el dinero aquello estaba bien hecho." Entonces el abogado del comprador le pregunta "¿Pero como usted consiguió el dinero usted echaba su palabra atrás?" y Annoni contesta "¡Ah! Seguro." (T.E. pág. 218.)

En el octavo error señalado las recurrentes plantean que la división de la parcela es injusta y la inutiliza para su mejor uso. La prueba demostró lo contrario. El perito ingeniero Héctor Deliz, profesional de amplia experiencia en esa especialidad, declaró que la finca es divisible; que por su configuración y forma de división que había hecho el ingeniero y profesor en el Colegio de Agricultura y Artes Mecánicas, Eduardo Ramírez, era "la subdivisión más lógica y razonable" que él encontraba de esa finca; que dicha división en nada perjudica una parcela a la otra; y que en nada menoscaba su valor. (T.E. págs. 108–111.) No se cometió dicho error.

En el tercer error señalado, último en nuestra discusión, las recurrentes plantean que Annoni no obligó a su esposa Francisca por carecer de mandato expreso y evidenciado por documento público. No tienen razón. En primer lugar, Sara, Rosa María y María Teresa se comprometieron a dividir sus condominios indivisos del de Francisca y se comprometieron a vender sus participaciones a Shivell. Ellas están obligadas por el contrato de 19 de julio de 1962. Francisca no se comprometió a vender y retendrá su participación. Pero Francisca no puede obligar a las demás copropietarias a permanecer en la comunidad. Art. 334 del Código Civil, 31 L.P.R.A. sec. 1279.

En segundo lugar, la intervención frecuente y directa de Annoni en las negociaciones que culminaron en el contrato de 19 de julio de 1962 y la aquiescencia de su esposa demuestra que había un mandato implícito de parte de Francisca hacia su esposo Roberto Annoni. Para el acto de la división no se necesita mandato evidenciado en documento público porque no es un acto de riguroso dominio. La división entre los partícipes en la comunidad es un acto declarativo y no traslativo. No traspasa sino que declara y precisa el contenido del derecho que los copartícipes ya tenían desde que comenzó la comunidad. El propio Código establece que

"Cada uno de los partícipes de una cosa que se posee en común, se entenderá que ha poseído la parte que al dividirse le cupiere durante todo el tiempo que duró la indivisión." Art. 379, Código Civil, 31 L.P.R.A. sec. 1465. Puig Brutau, *Fundamentos de Derecho Civil* (1953) III, 274; Velázquez, *Los Derechos Reales Principales* (1937) 147. Por poseer en este sentido características comunes la división de la copropiedad y la división de la herencia el Código asimila ambas situaciones y establece que serán aplicables a la división entre partícipes en la comunidad, las reglas concernientes a la división de la herencia, Art. 340, 31 L.P.R.A. sec. 1285, y como se sabe la división de la herencia no es un acto de riguroso dominio, sino uno de administración y declarativo. Messineo, *Derecho Civil y Comercial*, trad. española de Sentis Melendo (1956), Tomo VII, pág. 381; Ruggiero, *Instituciones de Derecho Civil*, trad. española de la 4ta. ed. italiana, Tomo II, Vol. 2, pág. 385; Puig Brutau, *ibid; Diccionario de Derecho Privado* (1954) I, 172. Refiriéndose al carácter declarativo de la división, Messineo explica:

"Carácter declarativo importa que la misma produce, no efectos atributivos, traslativos o dispositivos, sino efectos *distributivos,* o sea, como es conforme a su función y a su naturaleza, los de determinar concretamente—en el acto de poner fin a la comunidad hereditaria—la parte *concreta* de bienes que corresponde a cada uno de los codivisionarios, *precisando el contenido de ese derecho;* por consiguiente, la división no es *causa de adquisición* de los bienes, que correspondan al codivisionario (la adquisición se considera que ha tenido lugar ya *mediante* el llamamiento, en cuanto haya seguido de la *aceptación*)."—Obra y tomo citados; pág. 381.

Ya en *Milán* v. *Registrador*, 41 D.P.R. 98, 99 (1930), habíamos reconocido la diferencia entre un acto de riguroso dominio como es la enajenación y un acto de división de una comunidad de coherederos. Desde luego, en este caso no

procedería el retracto de comuneros por no reunir los requisitos para ello. *Fuertes* v. *Arzón*, 81 D.P.R. 491, 497 (1959).

Resumiendo, Sara, Rosa María y María Teresa quedaron obligadas a la división y a la venta. Francisca viene obligada a consentir a la división porque la ley le niega el poder de obligar a las otras copropietarias a permanecer en la comunidad.

En resumidas cuentas se trata de dos personas (Rosa María y María Teresa Barber) que se comprometieron a vender unos terrenos a un comprador determinado y luego se arrepintieron. Ahora buscan una disposición en la ley que les permita escapar de su compromiso. Nos parece que el Derecho Civil no es útil para eso.

*Por los motivos expresados en esta opinión se confirmará la sentencia dictada en este caso por el Tribunal Superior, Sala de Mayagüez, en 30 de abril de 1964. Se impondrán las costas de este recurso a las recurrentes Francisca Barber de Annoni, Rosa María Barber y María Teresa Barber de Silva.*