JUAN V. DÍAZ, COMO ADMINISTRADOR JUDICIAL DE SOCIEDAD DE MARIO MERCADO E HIJOS, EN LIQUIDACIÓN, Y OTROS, recurrentes, *v.* EL REGISTRADOR DE LA PROPIEDAD DE PONCE, recurrido.

*Número:* O-78-101          *Resuelto:* 10 de mayo de 1978

*Rafael Hernández Matos* y *César Hernández Colón*, abogados de los recurrentes; el Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

Los socios y partícipes en la disuelta sociedad Mario Mercado e Hijos, en número de 26, convinieron la división entre

ellos de 77 fincas rústicas con una cabida total de 8,273.114 cuerdas de terreno, valoradas en $14,911,860.00. Acordaron la formación de lotes (¹) que se distribuyeron mediante sorteo, y ello requirió una serie de agrupaciones y segregaciones previas, que modificaron y refundieron las fincas inmatriculadas conformándolas con la valoración que representaba la cuota adjudicada a cada parte en las operaciones de liquidación y división del caudal social, consignándose finalmente los acuerdos en un cuaderno particional que fue aprobado por el Tribunal Superior, Sala de Ponce, el 23 de diciembre de 1976, y enmendada su resolución aprobatoria por otra de 14 de octubre de 1977.

Presentado en el Registro de la Propiedad el citado convenio de partición, con el comprobante de derechos correspondientes a la operación final de adjudicación en pago de haber social, lo devolvió el Registrador sin practicar operación exigiendo derechos de arancel adicionales por las agrupaciones y segregaciones. A los fines de no demorar la inscripción, (²) los recurrentes entregaron en el Registro el comprobante adicional por $24,386.00 que les exigió el Registrador, e instaron el recurso gubernativo que ahora resolvemos.

▆▆▆ Todas las fincas objeto de liquidación y división constan inmatriculadas en el Registro de la Propiedad. Las operaciones de agrupación y segregación practicadas por los recurrentes son actos puramente administrativos, el vehículo indispensable para poner fin a la comunidad y entrar cada condueño en posesión de la parte específica de los bienes, ya

---

(¹) Ordena el Art. 1599 del Código Civil (31 L.P.R.A. sec. 4399) que la partición entre los socios se rija por las reglas de las herencias. Y el Art. 1014 (31 L.P.R.A. sec. 2880) dice: "En la partición de la herencia se ha de guardar la posible igualdad, haciendo lotes, o adjudicando a cada uno de los coherederos cosas de la misma naturaleza, calidad o especie."

(²) El Art. 4 de la vigente Ley de Arancel Núm. 91 de 30 de mayo de 1970 (30 L.P.R.A. sec. 1767d) dispone "que si el interesado deseare acogerse a la protección de sus derechos registrales deberá radicar el pago total de los derechos exigidos por el Registrador de la Propiedad antes de perfeccionarse el recurso gubernativo."

precisada en concordancia con sus respectivas cuotas o intereses sociales. La división es un acto declarativo sin efectos atributivos, traslativos o dispositivos, sino efectos distributivos.[3] Atendiendo a las características comunes que enlazan en similaridad la división de la copropiedad y la herencia, ordena el Art. 340[4] del Código Civil que las reglas concernientes a la división de la herencia serán aplicables a la división entre los partícipes en la comunidad; y el Art. 379[5] acentúa la naturaleza puramente declarativa del título que nos concierne al disponer que cada uno de los partícipes de una cosa que se posee en común, se entenderá que ha poseído la parte que al dividirse le cupiere durante todo el tiempo que duró la indivisión.

■ La segregación devenga derechos por su anotación en el Registro cuando se presenta como operación aislada y única en el documento presentado. No así cuando resulte incidental e instrumental a un acto de enajenación. La misma regla aplica a la agrupación. Sobre el particular ordena el Art. 60 [6] del Reglamento Hipotecario:

---

[3] *Shivell* v. *Barber y Boscio,* 92 D.P.R. 400, 410 (1965). Nuestra decisión en *Milán* v. *Registrador,* 41 D.P.R. 98, 99 (1930), destaca la diferencia entre la división de comunidad y el acto de enajenación y venta de la participación de un copropietario.

[4] 31 L.P.R.A. sec. 1285

"Serán aplicables a la división entre los partícipes en la comunidad, las reglas concernientes a la división de la herencia."

[5] 31 L.P.R.A. sec. 1465

"Cada uno de los partícipes de una cosa que se posee en común, se entenderá que ha poseído la parte que al dividirse le cupiere durante todo el tiempo que duró la indivisión. La interrupción del todo o parte de una cosa poseída en común, perjudicará por igual a todos."

[6] 30 L.P.R.A. sec. 918

"Cuando se divida una finca señalada en el registro con su número correspondiente, se inscribirá con número diferente la parte que se separe a favor del nuevo dueño, haciéndose breve mención de esta circunstancia al margen de la inscripción antigua, y refiriéndose a la nueva.

"Cuando se reúnan dos fincas para formar una sola, se inscribirá ésta con un nuevo número, haciéndose mención de ello al margen de cada una de las inscripciones anteriores relativas al dominio de las fincas que se

"Cuando una operación de segregación o agrupación se realice conjuntamente con un acto de enajenación, el Registrador cobrará solamente los derechos que fija el arancel para la enajenación."

El párrafo precedente fue adicionado como párrafo 3° del Art. 60 por Ley Núm. 75 de 13 de junio de 1960 e introdujo un cambio radical([7]) en la norma sobre cobro de derechos, pues

reúnan. En la nueva inscripción se hará también referencia de dichas inscripciones, así como de los gravámenes que las mismas fincas reunidas tuvieren con anterioridad.

"Cuando una operación de segregación o agrupación se realice conjuntamente con un acto de enajenación, el Registrador cobrará solamente los derechos que fija el arancel para la enajenación."

Poco antes de aprobarse la enmienda al Art. 60 del Reglamento, en su opinión Núm. 1960–17, de 25 marzo, 1960 el entonces Secretario de Justicia Sr. Hiram R. Cancio le informó al Contralor de Puerto Rico que "la práctica prevaleciente en los Registros ha sido *cobrar por una sola vez* cuando se trate de una segregación y una compraventa incluidas en un solo documento." Escasamente tres meses después, la enmienda convalidó la práctica.

([7]) El propósito legislativo de eliminar del arancel lo que tiene un efecto similar a la doble tributación, cuando se impone a operaciones conjuntas se manifiesta en las normas décima y undécima del Art. 2, Ley de Arancel Núm. 67 de 20 de junio de 1963, que ratifican la enmienda del Art. 60 del Reglamento por Ley de 1960 en el siguiente texto:

"Décima.—En los casos de segregación y venta de fincas o partes de ellas se cobrará exclusivamente por el precio de la trasmisión o trasmisiones hechas. Si únicamente se verifica la segregación, ésta devengará derechos con arreglo al valor que a la misma corresponda.

"Undécima.—Cuando se trata de agrupación de finca, cualquiera que sea la forma en que se realice, se cobrarán los derechos por el valor que corresponda a la nueva finca o a la agrupación considerada en su unidad. Y se aplicarán a los casos de agrupación y venta y de simple agrupación, lo establecido en la regla anterior para la segregación." (30 L.P.R.A. sec. 1767b.)

Esta Ley de Arancel de 1963 fue sometida a la Cámara de Representantes con el endoso de la Comisión de lo Jurídico y la de Hacienda, suscritos por sus presidentes Sres. Benjamín Ortiz Ortiz y Sigfredo Vélez González, de cuyo informe tomamos lo siguiente:

"La medida propuesta simplifica el arancel y fija criterios uniformes para determinadas operaciones en el Registro. Se eliminan las dos tablas existentes en la actualidad para cobrar por las operaciones que se efectúan en el Registro. Estas son sustituidas por otras tablas basadas en normas sencillas, más uniformes, y de más fácil aplicación. Se elimina, además, la distinción respecto a las inscripciones y anotaciones preventivas entre

hasta esa fecha se había sostenido que la agrupación realizada conjuntamente con un acto de enajenación, devengaba derechos aparte del acto traslativo. Véanse, *Quintero v. Registrador*, 66 D.P.R. 768, 770 (1946); y *P.R. Leaf Tobacco Co. v. Registrador*, 20 D.P.R. 398, 400 (1914).

■ La Ley de Arancel del Registro de la Propiedad es un estatuto tributario; el arancel tiene carácter de contribución. *Cf. Inspector de Protocolos v. Dubón*, 107 D.P.R. 50 (1978). Desde el año 1960, las leyes de arancel Núms. 67 de 1963 y 91 de 30 mayo, 1970 que es la vigente en la actualidad consolidaron el propósito de eliminar los aspectos de doble tributación, respondiendo al propósito enunciado en el Informe([8]) de los Sres. Benjamín Ortiz Ortiz y Sigfredo Vélez González, Presidentes de las Comisiones de lo Jurídico y de Hacienda de la Cámara de Representantes, respectivamente, de que "no se cobrarán derechos arancelarios por la mecánica de los derechos en sí, sino en razón de cada finca o derecho que comprenda la operación registral efectuada. No se le dará importancia al trabajo mecánico de hacer un asiento de mayor o menor extensión, sino que se cobrarán los derechos por la garantía que, en beneficio de terceros, brinda esta operación en el Registro de la Propiedad." En concordancia con dicho principio fueron insertas en el Art. 2 de la actual Ley de Arancel Núm. 91 de 1970, *supra*, las siguientes normas:

---

asientos extensos y concisos, equiparándose ambos asientos a los efectos del arancel. En otras palabras, no se cobrarán derechos arancelarios por la mecánica de los derechos en sí, sino en razón de cada finca o derecho que comprenda la operación registral efectuada. No se le dará importancia al trabajo mecánico de hacer un asiento de mayor o menor extensión, sino que se cobrarán los derechos por la garantía que, en beneficio de terceros, brinda esta operación en el Registro de la Propiedad." *Servicio Legislativo de Puerto Rico*, Vol. 1, pág. 810 (1963).

En la misma línea la norma Tercera dispuso que en las ventas con precio aplazado garantizado con hipoteca, se cobrarán los derechos sobre el precio fijado a la venta, sin incluir el valor de la hipoteca.

([8]) *Servicio Legislativo de Puerto Rico*, año 1963, Vol. 1, pág. 810, Edición Equity.

"Cuarta: En los casos de segregación y venta de fincas o partes de ellas se cobrará exclusivamente por el precio de la trasmisión o trasmisiones hechas. Si únicamente se verifica la segregación, ésta devengará derechos con arreglo al valor que a la misma corresponda.

Quinta: Cuando se trata de agrupación de finca, cualquiera que sea la forma en que se realice, se cobrarán los derechos por el valor que corresponda a la nueva finca o a la agrupación considerada en su unidad. Y se aplicarán a los casos de agrupación y venta y de simple agrupación, lo establecido en la regla anterior para la segregación." (30 L.P.R.A. sec. 1767b.)

■■■ La enmienda del Art. 60 del Reglamento por Ley de 1960 y las dos leyes de arancel que le siguieron en 1963 y 1970 eximen de arancel la segregación o agrupación supeditadas a una operación final principal a la que sirven y viabilizan. La serie de segregaciones y agrupaciones realizadas por los socios y partícipes de la Sociedad Mario Mercado e Hijos fueron actos accesorios hacia el objetivo principal de adjudicar a cada uno la propiedad precisa que en valor corresponda a cada uno al terminar la indivisión. Constituyen el método, impuesto por el requisito de previa inscripción del Art. 20 de la Ley Hipotecaria, para ingresar al Registro, el contrato particional, reconciliado con el principio de que el derecho real nace y existe fuera del Registro. Si bien la distribución entre comuneros del haber de la sociedad no es propiamente un acto de enajenación, sí tiene elementos de adjudicación recíproca necesaria para que la división opere modificando o cambiando un derecho impreciso en otro que se individualiza y concreta sobre bienes ciertos, que ingresan en el haber particular de cada heredero, por lo que le es aplicable la exención arancelaria de segregaciones y agrupaciones de coexistencia íntima con el acto principal de enajenación o venta, reconocida en el Art. 60 del Reglamento y las normas Cuarta y Quinta, *supra*. La transformación de lo abstracto en concreto, confiriendo a cada partícipe la propiedad exclusiva de los bienes que le hayan sido adjudicados (Art. 1021 C.C.)

es el objetivo único del cuaderno particional de la familia Mercado, y sobre la adjudicación exclusivamente deberá cobrar derechos el Registrador.

Se ordenará la inscripción del cuaderno particional de conformidad con los términos de esta opinión, y toda vez que la parte recurrente para acogerse a sus derechos registrales, según lo autoriza 30 L.P.R.A. sec. 1767d, radicó en el Registro de la Propiedad derechos adicionales por valor de $24,386.00 indebidamente exigidos por el Registrador, se ordenará su devolución a dicha parte.

*La nota recurrida será revocada.*

El Juez Presidente Señor Trías Monge no intervino. El Juez Asociado Señor Rigau se inhibió.