La Juez Asociada Señora Rodríguez Rodríguez
emitió la opinión del Tribunal.
En esta ocasión nos corresponde determinar si una escritura que instrumenta la partición de un caudal hereditario y la adjudicación de la titularidad de un inmueble, parte del caudal, a favor de uno de los coherederos —sin recibir los demás nada a cambio y, por lo tanto, renunciando éstos a cualquier interés sobre tal inmueble— supone una donación, para cuya oportuna inscripción en el Registro de la Propiedad se precisa el correspondiente relevo del Departamento de Hacienda.(1)
*865 I
El 19 de mayo de 2014, las sucesiones de Elena Meléndez Ocasio y Neptuin Miranda Archilla —anteriores condueños del inmueble que suscita la controversia que nos ocupa— comparecieron ante la notaria Rosana Marrero Betancourt y otorgaron la Escritura número 11, intitulada División de Comunidad Hereditaria. En ésta hicieron constar sus respectivas participaciones dominicales sobre un inmueble y, a la vez, lo adjudicaron, mediante la operación particional correspondiente, a favor del coheredero Sr. Gerardo Miranda Meléndez (recurrente). Las Sucesiones renunciaron, asimismo, a cualquier interés ulterior sobre el inmueble.(2) Valga destacar, además, que, según surge de la referida escritura, dicho inmueble estaba valorado en $68,000 y constituía el único bien de los caudales relictos concernidos que quedaba por dividir. Ese mismo día la escritura se presentó al Registro de la Propiedad, Sección de Barranquitas.
El 6 de noviembre de 2014, por su parte, el Hon. Joaquín del Río Rodríguez, Registrador de la Propiedad (Registrador), notificó las siguientes faltas respecto a la escritura de división de comunidad hereditaria que nos concierne:
1. Gerardo Miranda Meléndez, adquiere la totalidad de la propiedad sin efectuar pago alguno al resto de la sucesión, por lo cual esta transacción constituye una donación. Favor de someter el correspondiente certificado de cancelación de gravamen. (Relevo de Donación).
2. Pendiente de este documento: El asiento 1277 del Diario *866 578 escritura #18 de 2014, ante la misma notaría. Apéndice del Recurso gubernativo, pág. l.(3)
Como se ve, el Registrador entendió que en la Escritura número 11 se verificaba una donación, razón por la cual era necesario presentar un certificado de cancelación de gravamen tributario debidamente expedido por el Departamento de Hacienda del Estado Libre Asociado de Puerto Rico. Véase Sec. 2054.02(a) del Código de Rentas Internas para un Nuevo Puerto Rico, 13 LPRA see. 31162. Fundamentó lo anterior en el hecho de que, con excepción del recurrente, los demás herederos no habían derivado beneficio económico alguno de la transacción que nos ocupa.
Así las cosas, el 20 de noviembre de 2014, la parte recurrente presentó oportunamente un escrito de recalificación. Atendido el escrito, el Registrador denegó nuevamente la inscripción solicitada aduciendo como fundamento las faltas recién señaladas. Inconforme, el recurrente acudió a este Tribunal interponiendo, en sazón, el recurso gubernativo correspondiente. En este recurso, sin más, “objeta la calificación del Registrador por ser contraria al Derecho positivo vigente”. Recurso gubernativo, pág. 4.
En vista de lo anterior, para disponer de la controversia planteada conviene repasar someramente las normas sobre la partición convencional de la comunidad hereditaria. Esto es, debemos examinar la naturaleza de una partición realizada extrajudicialmente en virtud del convenio unánime de todos los coherederos.
*867 H

<

Como se sabe, “[l]a comunidad hereditaria surge al mundo del Derecho cuando fallece una persona con más de un heredero [...]”. E. González Tejera, Derecho de sucesiones, San Juan, Ed. UPR, 2001, T. I, pág. 399. Véanse: Vega Montoya v. Registrador, 179 DPR 80, 87 (2010); Soc. de Gananciales v. Registrador, 151 DPR 315, 317 (2000); Cintrón Vélez v. Cintrón De Jesús, 120 DPR 39, 48 (1987). En ésta, “cada heredero tiene, en principio, una titularidad global sobre el patrimonio hereditario relicto, si bien limitada por la concurrencia de otro u otros herederos que tienen un derecho cualitativamente idéntico, aunque puede ser cuantitativamente distinto”. L. Roca-Sastre Muncunill, Derecho de sucesiones, 2000, T. IV, pág. 7. En cuanto a sus rasgos esenciales, la comunidad hereditaria se caracteriza por ser: (1) universal, “por cuanto recae sobre la unidad patrimonial de la herencia”; (2) forzosa, “en cuanto surge con independencia absoluta de la voluntad de los titulares”, y (3) transitoria, “pues se constituye por la ley para disolverse por la partición”. Kogan v. Registrador, 125 DPR 636, 651 (1990), citando a J. Castán Tobeñas, Derecho Ovil español, común y floral, 8va ed., Madrid, Ed. Reus, 1978, T. VI, Vol. 1, págs. 298-299. Véase, también, J.A. Cuevas Segarra y A. Román García, Derecho sucesorio comparado (Puerto Rico y España), San Juan, Pubs. JTS, 2003, pág. 134.
En lo que respecta a su regulación positiva en nuestro Código Civil, este último no contiene disposiciones específicas que atiendan las complejidades que tal comunidad suscita, si bien reconoce su existencia cuando trata de su partición.(4) Vega Montoya v. Registrador, supra, pág. *868 87; Soc. de Gananciales v. Registrador, supra, pág. 318; Cintrón Vélez v. Cintrón De Jesús, supra, pág. 49. Por consiguiente, este Tribunal ha dispuesto que, en ausencia de nor-mas detalladas, este tipo de comunidad se regirá, en orden de prelación, por: “(i) las disposiciones imperativas del Código Civil; (ii) la voluntad del causante; (iii) las disposiciones que le sean aplicables sobre división de la herencia, y (iv) las disposiciones generales sobre comunidad de bienes que sean compatibles con el carácter universal de este tipo de comunidad”. Vega Montoya, supra, págs. 87-88, citando a Kogan, supra, pág. 651. Véase Cintrón Vélez, supra, pág. 49.
B
Como se dijo, nuestro Código Civil reconoce la existencia de la comunidad hereditaria implícitamente, si se quiere, en tanto la considera en su fase de terminación, es decir, en la partición. Sobre la partición, en general, cabe decir que
[...] es el acto jurídico, unilateral o plurilateral, necesario e irrevocable, de naturaleza declarativa, compuesto de un conjunto ordenado de operaciones verificadas sobre ciertas bases o supuestos de hechos y de Derecho, y en el cual, después de determinarse el activo y el pasivo de la masa hereditaria y de proceder a su avalúo y liquidación, se fija el haber de cada partícipe, se divide el caudal partible y se adjudica cada lote de bienes formados a cada heredero respectivo, provocando la transformación de las participaciones abstractas de los coherederos sobre el patrimonio relicto (derecho hereditario) en titularidades concretadas sobre bienes determinados (dominio o propiedad exclusiva u ordinaria). (Citas omitidas y énfasis suplido). Roca-Sastre Muncunill, op. cit., pág. 55.
Se colige de lo anterior, pues, que la partición constituye el momento cuando se resuelve la indivisión en torno a la cual gravitan los coherederos. En nuestro ordenamiento, además, es norma firmemente establecida que la naturaleza de ésta conlleva efectos declarativos o adjudicativos, y *869 no traslativos.(5) Véanse, entre otros: Díaz v. Registrador, 107 DPR 233, 236 (1978); Shivell v. Barber y Boscio, 92 DPR 400, 409-410 (1965). Es decir, según esta concepción de la partición,
[se] reputa a cada heredero haber sucedido sólo e inmediatamente al causante en todos los bienes contenidos en su hijuela. Se entiende que nunca tuvo la propiedad de los bienes del caudal adjudicados a los demás partícipes. Según esta doctrina, el heredero sólo tiene un causahabiente, el causante o de cuius, de manera que por ficción jurídica se entiende que ha tenido la propiedad de los bienes adjudicados desde la apertura de la sucesión. Como dicen unos tratadistas, la partición es declarativa, esto es: “explica qué bienes ha heredado efectivamente cada coheredero desde la apertura de la sucesión directamente del causante sin intervención de los coherederos ni mediante supuestas operaciones conmutativas. (Énfasis en el original y escolio omitido). González Tejera, op. cit., pág. 403, citando a J.L. Lacruz Berdejo y F. Sancho Rebullida, Derecho de sucesiones, Barcelona, [s. Ed.], 1971, Vol. 1, pág. 204.
En vista de lo anterior, la partición en nuestro ordenamiento meramente declara o adjudica lo que corresponde a cada heredero. Pagán Rodríguez v. Registradora, 177 DPR 522, 543 (2009) (“Cuando los comuneros se adjudican los bienes, realizan un acto de adjudicación consecutiva a un acto divisorio y no una transmisión de dominio”);(6) E.A. *870 Zannoni, Derecho de las sucesiones, 4ta ed., Buenos Aires, Ed. Astrea, 1997, T. 1, págs. 629-630. Más importante aún, esta operación supone que el heredero adjudicatario poseyó y tuvo para sí exclusivamente, en su patrimonio, lo adjudicado desde el momento mismo cuando se abrió la herencia. En efecto, se trata de una ficción jurídica mediante la cual el título del causahabiente —el heredero— desciende directamente del causante, sin que se considere la comunidad hereditaria en sí misma como un estado intermedio de titularidad.(7) Es decir, lo que se le adjudique a determinado heredero proviene directamente del causante y no de la comunidad hereditaria, la cual —huelga decirlo— no tiene personalidad jurídica propia. Kogan, supra, pág. 656.
En cuanto a la tipología que presenta la operación particional, nuestro Código Civil dispone, a lo sumo, tres maneras de efectuar la partición. En primer lugar, el testador, por sí mismo, podrá partir la herencia, según estime conveniente. Art. 1009 del Código Civil de Puerto Rico, 31 LPRA sec. 2875.(8) De otra parte, y subsumido en este tipo, el testador también podrá encomendar a un comisario que se encargue de efectuarla. Art. 1010 del Código Civil de Puerto Rico, 31 LPRA see. 2876. En segundo lugar, los coherederos, mediante acuerdo unánime, podrán partir la herencia como estimen conveniente. Art. 1011 del Código Civil de Puerto Rico, 31 LPRA see. 2877. Por último, cuando los coherederos no logren convenir en la forma de partir la herencia, ésta podrá llevarse a cabo judicialmente. Art. 1012 del *871 Código Civil de Puerto Rico, 31 LPRAsec. 2878. Ciñéndonos a los hechos particulares que presenta el caso ante nuestra consideración, conviene explorar los pormenores normativos del tercer tipo, esto es, la partición convencional.
C
El Artículo 1011 de nuestro Código Civil permite que “[cjuando el testador no hubiese hecho la partición, ni encomendado a otro esta facultad, [y] si los herederos fueren mayores y tuvieren la libre administración de sus bienes, [éstos] podrán distribuir la herencia de la manera que tengan por conveniente”. 31 LPRA see. 2877. Véase, por ejemplo, M. Albaladejo, Comentarios al Código civil y compilaciones forales, Madrid, Ed. Rev. Der. Privado, 1989, T. XIV, Vol. 2, pág. 346.(9) Así, dicho artículo consagra el consentimiento unánime entre coherederos como una de las posibilidades para verificar la partición de la comunidad hereditaria. Sin embargo, dada la amplitud de la potestad conferida por el Código, conviene puntualizar su alcance para delimitar el margen de liberalidad que tienen los coherederos al convenir en la forma y el modo de partir el caudal relicto que los vincula.
En primer lugar, debe precisarse que la naturaleza jurídica de este tipo de partición es la de un contrato, “porque se funda en varias declaraciones de voluntad”. J. Puig Brutau, Fundamentos de Derecho Civil, Barcelona, Ed. Bosch, 1984, T. V, Vol. III, pág. 400. Por tal razón, la partición convencional ha sido caracterizada como un “contrato plurilateral, al que cada [coheredero] concurre con interés opuesto al de los otros”. J.L. Lacruz Berdejo, Elementos de Derecho Civil, 4ta ed., 2009, T. V, pág. 117. Asi *872 mismo, y dada la contrariedad potencial de los intereses concernidos, esta partición requiere la unanimidad de los coherederos. Id.(10) Por otra parte, “[e]n cuanto a la forma, se entiende que la partición [convencional] de herencia se rige por el principio espiritualista, que no la requiere especial, independientemente del valor que pueda conferirle su otorgamiento en escritura pública dotándole de autenticidad y acceso a los registros públicos”. J. Vallet de Goytisolo, Panorama del derecho de sucesiones, Madrid, Ed. Civitas, 1984, T. II, pág. 931.
En virtud de lo anterior, en la partición convencional “rigen como regla general las reglas de los contratos [...]”. I. Sierra Gil de la Cuesta, Comentario del Código Civil, Barcelona, Ed. Bosch, 2000, T. V, pág. 600 (Comentarios de Jesús Corbal Fernández). Por lo tanto, los coherederos que partan su herencia convencionalmente deberán hacerlo ateniéndose en todo momento a los límites que coartan, precisamente, la libertad contractual. González Tejera, op. cit, pág. 434. Esto es, la partición hereditaria que pacten no podrá contravenir la ley, la moral ni el orden público. Art. 1207 del Código Civil de Puerto Rico, 31 LPRA see. 3372. Véase, también, C. Lasarte, Principios de Derecho Civil, 3ra ed., 2003, T. VII, pág. 400.
Por último, se deduce de lo anterior que el Artículo 1011 del Código Civil, supra, es un “precepto [que] consagra un principio de autarquía distributiva [...]”. F. Puig Peña, Compendio de Derecho Civil español, 3ra ed. rev., Madrid, Eds. Pirámide, 1976, T. VI, pág. 67. La libertad conferida por tal principio
[...] resulta suficientemente subrayad [a] en el inciso final del artículo 1.058 [—equivalente verbatim de nuestro Artículo *873 1011—], conforme al cual los coherederos “podrán distribuir la herencia de la manera que tengan por conveniente”, expresión de gran fuerza gramatical que pretende resaltar que, si resulta procedente la partición convencional [...], los herederos podrán partir los bienes incluso sin necesidad de observar lo prescrito por el testador [...] Lasarte, op. cit., pág. 400. Cf., E. González Tejera, Derecho de familia y derecho sucesorio, 60 (Núm. 3) Rev. Jur. UPR 1053, 1073 (1991).
Incluso, siendo los coherederos mayores de edad y plenamente capaces —tal y como lo son en el caso que nos atañe—, éstos podrán partir la herencia sin ceñirse al “principio de igualdad cualitativa en la partición, es decir, formación de lotes de bienes de igual naturaleza o calidad”. Sucn. Sepúlveda Barreto v. Registrador, supra, pág. 407.
En fin, evaluado el ámbito de libertad del que gozan los coherederos cuando deciden, unánimemente, partir la herencia mediante convenio, “[n]o hay razón alguna para negarle a los herederos plena soberanía en la distribución de los bienes relictos siempre que los acuerdos no contravengan la ley, la moral o el orden público”. Sucn. Sepúlveda Barreto, supra, pág. 408. Por otra parte, el cabal reconocimiento de esta libertad no ha de incidir en la naturaleza del acto mismo —la partición—, que es indudablemente declarativa.
Examinado el Derecho aplicable, procede evaluar los pormenores fácticos de la controversia a la luz de éste.
I—I f—! H—I
Como se dijo en la relación de hechos, en el caso que nos ocupa, al señor Miranda Meléndez —el recurrente— se le adjudicó un inmueble perteneciente a las sucesiones de Elena Meléndez Ocasio y Neptuín Miranda Archilla en virtud del consentimiento unánime de todos los coherederos de ambos, entre los que se encontraba el propio *874 peticionario.(11) Asimismo, los coherederos que convinieron en dicha adjudicación cedieron y renunciaron a cualquier posible reclamo o derecho que pudiera surgir a raíz de ésta. Por último, declararon conspicuamente que la adjudicación en cuestión era hecha amistosamente, conforme lo resuelto por este Tribunal en Sucn. Sepúlveda Barreto v. Registrador, supra, pág. 407. Los comparecientes también invocaron lo resuelto por este Tribunal en Pagán Rodríguez v. Registradora, 177 DPR 522 (2009), con tal de despejar cualquier duda en tomo a la naturaleza adjudicativa de la escritura que sancionaron.(12) En esencia, adujeron que dado que la partición, en virtud de su naturaleza declarativa, meramente modifica el dominio, no cabe hablar de donación en este caso.
El Registrador, por su parte, argüyó que la adjudicación del inmueble a favor del señor Miranda Meléndez, sin que los demás coherederos recibieran una contraprestación, configuraba una donación, para cuya inscripción se precisaba el correspondiente relevo del Departamento de Hacienda.
Evaluadas las contenciones de las partes a la luz del Derecho aplicable, y al no existir duda alguna sobre la naturaleza declarativa de la partición hereditaria en nuestro ordenamiento jurídico, resolvemos que la partición convencional practicada por los comparecientes en este caso no constituye una donación. Ello, puesto que, jurídica y conceptualmente, lo contrario desnaturalizaría la figura particional convencional que recoge el Artículo 1011 del Código Civil de Puerto Rico. Además, como bien señala el peticionario, en gran medida, nuestro precedente en Sucn. Sepúlveda Barreto resuelve, sin más, el asunto que nos atañe.
En Sucn. Sepúlveda Barreto este Tribunal resol *875 vio que, en el contexto de una partición convencional en las que los coherederos no se hayan atenido al principio de igualdad cualitativa, las disparidades resultantes entre sus hijuelas no debían ser consideradas una donación. Ello, puesto que
[e]l título de la sucesión siempre es el testamento o la declaratoria de herederos, pero ya hemos visto cómo a través de la partición todos los integrantes de la sucesión pueden prescindir o variar la voluntad real o presunta del causante. Aunque cuando esto ocurre en efecto se realiza una adquisición hereditaria seguida de otro negocio de transmisión, la adjudicación de los bienes del caudal queda jurídicamente entroncada con la disposición sucesoria. Registralmente ocurre una aplicación más del principio de tracto abreviado, ya que el negocio intermedio no se refleja en el Registro de la Propiedad y se acude “a la ficción de que la cosa adjudicada ha pasado directamente del transmitente al adjudicatario [...]”. (Cita omitida). Sucn. Sepúlveda Barreto, supra, págs. 409-410.
Así, es incuestionable el carácter declarativo de la partición. Más aún, no cabe hablar de donación en el contexto de una partición hereditaria, salvo que exista prueba preponderante de que los herederos acordaron realizarla. Véase González Tejera, Derecho de sucesiones, op. cit, pág. 435. Tal prueba, en cualquier caso, deberá permitir inferir el ánimo de liberalidad de los coherederos.
En el caso que nos ocupa, los coherederos señalaron expresamente que acordaban con carácter amistoso la adjudicación del inmueble restante de la comunidad hereditaria. El carácter amistoso, sin embargo, no se refiere tanto a la causa como al hecho indispensable de que los coherederos convengan unánimemente y extrajudicialmente en cómo efectuar la partición. Véase Roca-Sastre Muncunill, op. cit., pág. 171 (“[P]ara que pueda practicarse extrajudicialmente o de un modo amistoso la partición entre los herederos, se requiere unanimidad [...]”)• Después de todo, “ ‘[l]a causa del contrato es la función económica y social que el mismo debe llenar o cumplir’ ”. (Corchetes en *876 el original). BPPR v. Sucn. Talavera, 174 DPR 686, 702 (2008), citando a L. Diez-Picazo, Fundamentos de derecho civil patrimonial, 2da ed., Madrid, Ed. Tecnos, 1983, Vol. I, pág. 881.
Así, siendo la partición convencional un contrato, la causa de ésta es la resolución de la indivisión que supone la comunidad hereditaria. Nótese, además, que significar como una donación la operación particional convenida unánimemente entre los coherederos contravendría la naturaleza declarativa de ésta. Ello toda vez que la donación es un acto jurídico de naturaleza propiamente traslativa, cuya causa se cifra en la liberalidad del donante. Véase, por ejemplo, Puig Brutau, op. cit, Vol. II, págs. 327-330.
Por lo tanto, es forzoso concluir que la adjudicación del inmueble en cuestión a favor del peticionario —señor Miranda Meléndez— no configura una donación cuya inscripción en el Registro de la Propiedad requiera presentar el certificado de cancelación de gravamen tributario expedido por el Departamento de Hacienda.
IV
En mérito de lo antes expuesto, no proceden las faltas notificadas por el Registrador de la Propiedad recurrido. En consecuencia, se revoca su nota y se ordena la calificación de la escritura concernida, en conformidad con lo aquí resuelto.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Estrella Martínez concurrió con las expresiones siguientes:
Concurro con la Opinión emitida por este Tribunal por en-tender que lo aquí dispuesto fue resuelto en Sucn. Sepúlveda Barreto v. Registrador, 125 DPR 401 (1990). En aquella ocasión, este Tribunal dispuso que en una partición convencional por acuerdo unánime de los herederos no hay que cumplir con el principio de igualdad cualitativa. Además, rechazamos ex- *877 presamente que tal distribución desigual constituya una donación, por lo que nada impedía la inscripción de la partición convencional acordada en el Registro. íd., págs. 409-410.

 Conviene señalar que la partición que nos atañe fue hecha al amparo del Artículo 1011 del Código Civil de Puerto Rico, que dispone que “[c]uando el testador no hubiese hecho la partición, ni encomendado a otro esta facultad, si los herederos fueren mayores y tuvieren la libre administración de sus bienes, podrán distribuir la herencia de la manera que tengan por conveniente”. 31 LPRA see. 2877.

 Por otro lado, los comparecientes declararon que ejercían su voluntad conforme a los Artículos 1009 al 1012 del Código Civil, 31 LPRA sees. 2875-2878, y lo resuelto por este Tribunal en Sucn. Sepúlveda Barreto v. Registrador, 125 DPR 401 (1990). Manifestaron también que, dado que el recurrente era un titular inscrito, en tanto coheredero, la adjudicación efectuada a través de la escritura surtía efectos modificativos respecto al dominio, por lo que no debía ser considerada como una donación. Para esto aludieron a Pagán Rodríguez v. Registradora, 177 DPR 522 (2009).

 Posteriormente, el 12 de agosto de 2014, el señor Miranda Meléndez suscribió la Escritura número 18, a través de la cual pretendía inscribir su derecho a hogar seguro conforme con los términos dispuestos en la Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar, Ley Núm. 195 de 13 de septiembre de 2011, según enmendada, 31 LPRA sees. 1858 et seq. Esa escritura se presentó el 28 de agosto de 2014 en la Sección de Barranquitas del Registro de la Propiedad. La inscripción de la escritura, sin embargo, no está en controversia. Por lo tanto, nada se dirá sobre este particular.

 Tal reconocimiento se cifra en el presupuesto de que al momento de partirse la herencia los coherederos se encuentran en un estado de indivisión con respecto al caudal relicto. Véase, en particular, Arts. 1005-1034 del Código Civil de Puerto Rico, 31 LPRAsecs. 2871-2919.

 Es menester notar, empero, que existe en la doctrina científica controversia en lo que respecta a la naturaleza jurídica de la partición de la comunidad hereditaria. Véanse, por ejemplo: J.L. Lacruz Berdejo, Elementos de Derecho Civil, 4ta ed., 2009, T. V, págs. Í08-110; J. Puig Brutau, Fundamentos de Derecho Civil, Barcelona, Ed. Bosch, 1983, T. V, Vol. III, págs. 400-411. Tal disputa, y al margen de posiciones intermedias, se reduce a determinar la raigambre germánica o románica de ésta. Ello, pues según se caracterice la comunidad hereditaria en un sentido u otro, la partición habrá de surtir efectos declarativos o traslativos, respectivamente. Véanse: A. Cristina Gómez Pérez y Y.M. Figueroa Collazo, El registro y la inscripción de la comunidad de bienes, 81 Rev. Jur. UPR 299, 304 (2012); F. Bonet Ramón, Compendio de Derecho Civil, Madrid, Ed. Rev. Der. Privado, 1965, T. V, págs. 820-821. En nuestro ordenamiento, sin embargo, no cabe duda que la comunidad hereditaria tiene atributos propiamente germánicos y que la partición “es un acto declarativo sin efectos atributivos, traslativos o dispositivos, sino efectos distributivos”. Díaz v. Registrador, 107 DPR 233, 236 (1978).

 Dado que en Pagán Rodríguez se trataba de una comunidad postganancial, conviene precisar que este Tribunal ha comparado ese tipo de comunidad con la comunidad hereditaria. íd., pág. 533. Ello en atención a las características peculiares de ambas. Id.

 Cf., Art. 369 del Código Civil de Puerto Rico, 31 LPRA see. 1443 (“La posesión de los bienes hereditarios se entiende trasmitida al heredero sin interrupción y desde el momento de la muerte del causante [...]”); Sucn. Maldonado v. Sucn. Maldonado, 166 154, 178 (2005).

 Este tipo de partición “[e]s [...] un supuesto muy particular, pues no habiéndose formado todavía la ‘comunidad hereditaria’, resulta anómala y extraña esta figura particional de una situación comunitaria que todavía no se ha producido”. F. Puig Peña, Compendio de Derecho Civil español, 3ra ed. rev., Madrid, Eds. Pirámide, 1976, T. VI, pág. 31. Para una discusión más pormenorizada sobre el particular, véase L. Roca-Sastre Muncunill, Derecho de sucesiones, págs. 93-121.

 Para una síntesis de la normativa sobre el artículo que nos ocupa y que versa sobre asuntos que rebasan los límites de la controversia ante nuestra consideración, véase E. Martínez Moya, El derecho sucesorio puertorriqueño, 67 Rev. Jur. UPR 1, 45 (1998).

 No debe perderse de vista que en el presente caso todos los coherederos son mayores de edad y con plena capacidad para manejar y enajenar sus bienes. Por consiguiente, valga señalar que lo resuelto en esta Opinión se limita a tales circunstancias.

 De las constancias de la escritura que otorgaron los coherederos surge que el inmueble en cuestión era el único bien que restaba por adjudicar en ambas sucesiones. Nótese, además, que éstas eran dueñas del inmueble en igual proporción.

 Debido a que la naturaleza declarativa de la partición no está en duda en nuestro ordenamiento, la discusión del caso Pagán Rodríguez v. Registradora, 177 DPR 522 (2009), es innecesaria.