SUCESIÓN de CARMEN SEPÚLVEDA BARRETO, recurrente, *v.* HON. CARMEN D. MIRANDA, REGISTRADORA DE LA PROPIEDAD, SECCIÓN SEGUNDA, BAYAMÓN, recurrida.

Número: RG-88-498      Resuelto: 2 de febrero de 1990

402

*Ángel Adorno Coira,* abogado de la recurrente; la Registradora de la Propiedad recurrida compareció por escrito.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

En este recurso debemos resolver si un Registrador de la Propiedad puede cuestionar la forma en la cual los herederos de una sucesión, todos con plena capacidad para disponer de sus bienes, se dividen y adjudican entre sí los bienes de su causante en una partición practicada por ellos mismos al amparo del Art. 1011 del Código Civil, 31 L.P.R.A. sec. 2877. Revocamos la nota recurrida.

I

La sucesión de Carmen Sepúlveda Barreto, compuesta por Baltazar y Antonia Adorno Sepúlveda y Juan Meléndez Sepúlveda, presentó ante el Registro de la Propiedad una escritura de "División de Comunidad Hereditaria" otorgada por todos ellos ante el notario Ángel Adorno Coira. Mediante la referida escritura, los recurrentes segregan seis (6) predios de una finca rústica que recibieron por herencia, dedican dos (2) de estos lotes para el uso público y se adjudican los otros cuatro (4) y el remanente entre ellos mediante "mutuo acuerdo . . . [y en] la proporción convenida a tenor con sus intereses". Apéndice 1, pág. 5. En esta escritura los herederos recurrentes manifiestan también renunciar "a toda nueva valorización y a toda reclamación de unos contra otros", reconocen "que cada uno ha recibido lo justo" y, finalmente, "se dan y otorgan mutuas y recíprocas cartas d [sic.] pago". Íd.

La distribución se efectuó de la forma siguiente: A Juan Meléndez Sepúlveda se le adjudicó un (1) lote valorado en $12,557; a Baltasar Adorno Sepúlveda dos (2) lotes, uno valorado en $7,114 y el otro en $17,088; a Antonia Adorno Sepúlveda dos (2) lotes, uno valorado en $12,177 y el otro en $24,201. La escritura no tiene el inventario y avalúo de ningún otro bien del caudal, por lo que se desconoce si los hubo. No obstante, se hicieron de manera correcta las adjudicaciones concretas a cada heredero, se describieron adecuadamente las fincas a segregarse, se acompañó el plano de segregación aprobado por la Administración de Reglamentos y Permisos y se sometieron otros documentos complementarios necesarios para su inscripción.

Luego de examinar la escritura en el proceso de calificación, la Registradora de la Propiedad recurrida notificó dos (2) faltas que impedían su inscripción:

1. Para inscribir adjudicaciones concretas, deberán determinarse en escritura pública o por resolución judicial firme, los bienes o partes indivisas de los mismos que correspondan o se adjudiquen a cada titular o heredero. Art. 95 Ley 198.

2. En la partición de la herencia se ha de guardar la posible igualdad, haciendo lotes o adjudicando a cada uno de los coherederos cosas de la misma naturaleza, calidad o especie. T. 31 Se[c]. 2880 Código Civil. Apéndice 2, pág. 7.

Oportunamente se sometió un escrito de recalificación en el cual el notario señaló esencialmente que como en este caso existe la concurrencia de todos los herederos mayores de edad y con la libre administración de sus bienes, y en ausencia de testamento, es de aplicación el Art. 1011 del Código Civil, *supra*, que los faculta a "distribuir la herencia de la manera que tengan por conveniente". La Registradora de la Propiedad no denegó la inscripción solicitada, pero setenta y tres (73) días después envió una segunda notificación que reproducía las mismas faltas de la primera y le añadía a la segunda falta la explicación siguiente: "[S]i en la distribución

se beneficiaron unos se presume donación por parte de los que así lo hicieron por lo que deberán cumplir con dicho trámite. Art. 64 Ley hip." Apéndice 4, pág. 9.

El notario autorizante volvió a solicitar la inscripción del documento mediante nuevo escrito de recalificación y expuso que no había donación alguna, "sino una distribución y adjudicación hecha por los herederos . . . a su mejor conveniencia". Apéndice 5, pág. 10. No obstante, la Registradora de la Propiedad se reiteró en su negativa a inscribir. De dicha denegatoria se recurre ante este Foro.

## II

La cotitularidad sobre un patrimonio relicto conocida como "comunidad hereditaria" termina con la partición de la herencia. E. González Tejera, *Derecho Sucesorio Puertorriqueño*, San Juan, Ed. Ramallo, 1983, Vol. 1, pág. 294. Mediante este acto jurídico, los herederos —quienes hasta ese momento son únicamente titulares de una cuota abstracta sobre la totalidad del caudal hereditario— convierten sus participaciones indivisas en la herencia en bienes determinados o cuotas sobre bienes determinados. F. Puig Peña, *Tratado de Derecho Civil Español*, Madrid, Ed. Rev. Der. Privado, 1965, T. V, Vol. III, pág. 162.

Nuestro Derecho dispone varias formas de partición. Así, tenemos la practicada por el propio testador, la verificada por comisario o contador partidor, la efectuada por los propios herederos y la partición judicial. Véanse los Arts. 1009–1012 del Código Civil, 31 L.P.R.A. secs. 2875–2878. Sobre la partición practicada por los propios herederos, el Art. 1011 del Código Civil, *supra*, señala que:

> Cuando el testador no hubiese hecho la partición, ni encomendado a otro esta facultad, si los herederos fueren mayores y tuvieren la libre administración de sus bienes, podrán distribuir la herencia de la manera que tengan por conveniente.

Este sencillo y práctico método de distribuir la herencia debería ser la forma más común de partición extrajudicial, "[p]ero las complicaciones de carácter sentimental y económico que generalmente produce esta partición, agravadas aún más por . . . [el] *principio de unanimidad*, han provocado el desprestigio de esta forma de distribuir los bienes del causante". (Énfasis en el original.) Puig Peña, *op. cit.*, pág. 234. A falta de entendimiento sobre el modo de dividir el caudal, cualquier heredero puede ejercitar su derecho a que el caudal sea partido a través del procedimiento judicial. Véase Art. 1012 del Código Civil, *supra*.

■ A pesar de los términos de los Arts. 1011 y 1012 del Código Civil, *supra*, este tipo de partición extrajudicial, también llamada "amistosa", no exige que todos los herederos sean plenamente capaces. Tratándose de menores u otros incapaces, éstos pueden actuar a través de sus legítimos representantes, quienes suplirán o complementarán la capacidad necesaria.[1] R.M. Roca Sastre y L. Roca-Sastre Muncunill, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. III, pág. 763.

## III

En esencia, la Registradora de la Propiedad objetó la inscripción de la escritura presentada porque no se distribuyó equitativamente la herencia, beneficiándose unos a costa de otros.[2] La funcionaria recurrida expone que si bien los he-

[1] Sobre la capacidad requerida para ejecutar la partición, véase E. González Tejera, *Derecho Sucesorio Puertorriqueño*, San Juan, Ed. Ramallo, 1983, Vol. 1, págs. 303–314.

[2] La Registradora de la Propiedad también aduce que la escritura no cumple con el Art. 95 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2316. Su señalamiento se limita a citar parcialmente *ad verbatim* el quinto párrafo del Art. 95, *supra*, pero omite su última oración, de particular relevancia en este caso: ". . . o también escritura pública a la cual hayan prestado

rederos pueden ponerse de acuerdo en cuanto a cómo van a distribuirse la herencia, tienen que guardar incólumemente el principio de la igualdad en valor al adjudicar los bienes del caudal. No tiene razón.

■ La partición hecha por acuerdo unánime de los interesados es un contrato. M. Albaladejo, *Curso de Derecho Civil*, Barcelona, Ed. Bosch, 1982, T. 5, pág. 156. Como pacto entre los coherederos, el Código Civil permite la distribución "de la manera que tengan por conveniente". 31 L.P.R.A. sec. 2877. No obstante, debemos precisar el verdadero alcance de la libertad de pactos en esta materia. Para ello hay que distinguir entre el caso en que los herederos realizan la partición sólo en su sentido estricto o distributivo, y cuando la ejecutan con motivo de llevar a la práctica "una actividad de mayor intensidad". Puig Peña, *op. cit.*, pág. 241.

Si todos los herederos son mayores y capaces, pueden verificar la partición en la forma que tengan por conveniente sin necesidad de ajustarse al testamento ni cumplir con las disposiciones del Código Civil que imponen el principio de igualdad cualitativa en la partición, es decir, formación de lotes de bienes de igual naturaleza o calidad. Roca Sastre y Roca-Sastre Muncunill, *op. cit.*, págs. 763 y 769. "[E]n cambio, cuando haya menores o incapaces, sólo cabe partir simplemente, o sea, hacer cesar la indivisión ajustándose a las reglas del testamento y de la ley." Íd., pág. 763.

En el caso de autos estamos ante la concurrencia en la partición de herederos plenamente capaces actuando unánimemente. Ante estas circunstancias, como señala Albaladejo:

su consentimiento todos los interesados, si se adjudicare solamente una parte del caudal y aquéllos tuvieren la libre disposición del mismo." Véase *Colón Gutiérrez v. Registrador*, 114 D.P.R. 850 (1983). Como bien señala el recurrente, "el documento objeto de este recurso, precisamente pretende inscribir las adjudicaciones concretas que se han asignado a cada heredero". Recurso Gubernativo, pág. 3. La improcedencia del defecto, ante la corrección formal de las adjudicaciones concretas a cada heredero en la escritura, no amerita más discusión.

[P]ueden acordar *lo que les plazca*, aun *sin atenerse ni a las reglas legales sobre la forma de hacer el reparto*, ni al testamento, *o a las porciones que les toquen en la sucesión intestada*, y manejando, como manejan, sus propios intereses pueden hasta mezclar con partición, otorgándolo todo en un mismo acto querido globalmente, asuntos ajenos a aquélla.

"Como, por ejemplo, renuncia de derechos (así uno de los coherederos se desprende de algo a favor de los otros); o concesión de ciertos bienes particulares de un heredero a los otros, a cambio de que éstos se avengan a distribuir de determinada forma los del difunto; o transacción en un asunto distinto del hereditario, pero pendiente entre ellos, a base de ceder todo o parte de lo que les correspondería en una partición estricta." (Énfasis suplido.) Albaladejo, *op. cit.*, pág. 156. Véanse, también: González Tejera, *op. cit.*, págs. 5324–5325; Roca Sastre y Roca-Sastre Muncunill, *op. cit.*, pág. 769; B. Camy Sánchez-Cañete, *Comentarios a la Legislación Hipotecaria* 532 (1983); Puig Peña, *op. cit.*, pág. 243; Q.M. Scaevola, *Código Civil*, 2da ed., Madrid, Ed. Reus, 1954, T. XVIII, págs. 561–562; J.M. Manresa, *Comentarios al Código Civil Español*, 7ma ed., Madrid, Ed. Reus, 1955, T. VII, págs. 762–763.

■ No hay razón alguna para negarle a los herederos plena soberanía en la distribución de los bienes relictos siempre que los acuerdos no contravengan la ley, la moral o el orden público. Art. 1207 del Código Civil, 31 L.P.R.A. sec. 3372. Realmente ellos son los verdaderos interesados. En el pasado hemos aprobado este principio, aun ante la presencia de contadores-partidores nombrados por el testador. *Irizarry v. Regis. de San Germán*, 22 D.P.R. 94 (1915); *Ex Parte Sotomayor et al.*, 24 D.P.R. 185 (1916). Véase, también, *Muñoz v. Registrador*, 41 D.P.R. 676, 682 (1931). Aunque el ordenamiento dispone para que los hijos hereden del difunto por partes iguales (Art. 895 del Código Civil, 31 L.P.R.A. sec. 2643), nada impide la renuncia a este derecho sucesorio. *Cf.* Puig Peña, *op. cit.*, pág. 243.

■ Si bien en este caso la escritura de división de comunidad no contiene un inventario de los bienes del caudal ni su

avalúo y tasación, estos detalles no son indispensables para la validez del negocio. Si se satisfacen los requisitos de los contratos pluripersonales, "los partícipes quedan vinculados por la nueva situación jurídica, extinguiendo en esa forma las relaciones anteriores". González Tejera, *op. cit.*, págs. 324–325.

■ La jurisprudencia civil y registral española ha ratificado el principio de la libertad de pacto de los herederos frente a disposiciones testamentarias incompatibles con dicha autonomía de la voluntad. Véase S. de 7 de noviembre de 1935, Núm. 2168, IV Repertorio de Jurisprudencia 963. En una muy relevante resolución, la Dirección General de los Registros de España dictaminó que un registrador de la propiedad carece de facultades para discutir el detalle de las operaciones de partición realizadas por quienes tienen plena capacidad para disponer de sus bienes. Res. de 13 de octubre de 1916, Núm. 17, III Jurisprudencia Civil, CXXXVIII Rev. Gen. Leg. Jur. 88.

■ Finalmente, debemos rechazar el planteamiento de la Registradora de la Propiedad de que al haber una distribución desigual estamos ante una donación y que, como tal, se debía cumplir con el trámite correspondiente para su inscripción.

El título de la sucesión siempre es el testamento o la declaratoria de herederos, pero ya hemos visto cómo a través de la partición todos los integrantes de la sucesión pueden prescindir o variar la voluntad real o presunta del causante. Aunque cuando esto ocurre en efecto se realiza una adquisición hereditaria seguida de otro negocio de transmisión, la adjudicación de los bienes del caudal queda jurídicamente entroncada con la disposición sucesoria. Camy Sánchez-Cañete, *op. cit.*, pág. 533. Registralmente ocurre una aplicación

más del principio de tracto abreviado, ya que el negocio intermedio no se refleja en el Registro de la Propiedad y se acude "a la ficción de que la cosa adjudicada ha pasado directamente del transmitente al adjudicatario . . .". Íd. La Registradora de la Propiedad no tenía por qué exigirle a los recurrentes que acreditaran el trámite de la donación.

Por todo lo antes expuesto, *no proceden las faltas notificadas por la Registradora de la Propiedad recurrida y, en consecuencia, se revocará su nota y se ordenará la inscripción del documento.*