EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Gerardo Miranda Meléndez<br><br>Recurrente<br><br>v.<br><br>Hon. Joaquín del Río Rodríguez<br>Registrador de la Propiedad<br>Sección de Barranquitas<br><br>Recurrido | Certiorari<br><br>2015 TSPR 132<br><br>193 DPR ____ |

Número del Caso: RG-2014-4

Fecha: 1ro de octubre de 2015

Abogada de la Parte Peticionaria:

        Lcda. Rosana Marrero Betancourt

Abogado de la Parte Recurrida:

        Lcdo. Joaquín Del Río Rodríguez

Materia: Derecho de Sucesiones - Partición hereditaria por acuerdo unánime de los herederos

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Gerardo Miranda Meléndez | | |
| :--- | :---: | :--- |
| Recurrente | | |
| v. | | |
| Hon. Joaquín del Río Rodríguez Registrador de la Propiedad, Sección de Barranquitas | RG-2014-0004 | |
| Recurrido | | |

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez


San Juan, Puerto Rico, a 2 de octubre de 2015


En esta ocasión nos corresponde determinar si una escritura que instrumenta la partición de un caudal hereditario y la adjudicación de la titularidad de un inmueble, que es parte de éste, a favor de uno de los coherederos -sin recibir los demás nada a cambio y, por tanto, renunciando éstos a cualquier interés sobre el mismo- supone una donación, para cuya oportuna inscripción en el Registro de la Propiedad se precisa el correspondiente relevo del Departamento de Hacienda.[1]

---

[1] Conviene señalar que la partición que nos atañe fue hecha al amparo del artículo 1011 del Código Civil de Puerto Rico, que dispone que "[c]uando el testador no hubiese hecho la partición, ni encomendado a otro esta facultad, si los herederos fueren mayores y tuvieren la libre administración de sus bienes, podrán distribuir la herencia de la manera que tengan por conveniente". Cód. Civil P.R. Art. 1011, 31 L.P.R.A. sec. 2877.

# I

El 19 de mayo de 2014, las sucesiones de Elena Meléndez Ocasio y Neptuín Miranda Archilla -anteriores condueños del inmueble que suscita la controversia que nos ocupa- comparecieron ante la notaria Rosana Marrero Betancourt y otorgaron la escritura número 11, intitulada *División de comunidad hereditaria*. En ésta, hicieron constar sus respectivas participaciones dominicales sobre un inmueble y, a la vez, adjudicaron éste, mediante la operación particional correspondiente, a favor del coheredero Sr. Gerardo Miranda Meléndez (recurrente), renunciando, asimismo, a cualquier interés ulterior sobre el mismo.[2] Valga destacar, además, que, según surge de la referida escritura, dicho inmueble estaba valorado en $68,000.00 y constituía el único bien de los caudales relictos concernidos que quedaba por dividir. Ese mismo día la escritura fue presentada al Registro de la Propiedad, sección de Barranquitas.

El 6 de noviembre de 2014, por su parte, el Hon. Joaquín del Río Rodríguez, Registrador de la Propiedad,

---

[2] Por otro lado, los comparecientes declararon que ejercían su voluntad conforme a los artículos 1009 al 1012 del Código Civil y lo resuelto por este Tribunal en *Sucn. Sepúlveda Barreto v. Registrador*, 125 D.P.R. 401 (1990). Manifestaron, también, que dado que el recurrente era un titular inscrito, en tanto coheredero, la adjudicación efectuada a través de la escritura surtía efectos modificativos respecto al dominio, por lo que no debía ser considerada como una donación, aludiendo a *Pagán Rodríguez v. Registradora*, 177 D.P.R. 522 (2009).

notificó las siguientes faltas respecto a la escritura de división de comunidad hereditaria que nos concierne:

> 1. Gerardo Miranda Meléndez adquiere la totalidad de la propiedad sin efectuar pago alguno al resto de la sucesión, por lo cual esta transacción constituye una donación. Favor de someter el correspondiente certificado de cancelación de gravamen (Relevo de Donación).
> 2. Pendiente de este documento: El Asiento 1277 del Diario 578 escritura #18 de 2014, ante la misma notaria.[3]

Como se ve, el Registrador entendió que en la escritura número 11 se verificaba una donación, razón por la cual era necesario presentar un certificado de cancelación de gravamen tributario debidamente expedido por el Departamento de Hacienda del Estado Libre Asociado de Puerto Rico. Véase Cód. Rentas Internas P.R. Sec. 2054.02(a), 13 L.P.R.A. sec. 31162. Fundamentó lo anterior en el hecho de que, con excepción del recurrente, los demás herederos no habían derivado beneficio económico alguno de la transacción que nos ocupa.

Así las cosas, el 20 de noviembre de 2014, la parte recurrente presentó oportunamente un escrito de recalificación. Atendido éste, el Registrador denegó nuevamente la inscripción solicitada, aduciendo como

---

[3] Posteriormente, el 12 de agosto de 2014, el señor Miranda Meléndez suscribió la escritura número 18, a través de la cual pretendía inscribir su derecho a hogar seguro, conforme a los términos dispuestos en la *Ley del derecho a la protección del hogar principal y el hogar familiar*, Ley Núm. 195 de 13 de septiembre de 2011, según enmendada, 31 L.P.R.A. secs. 1851 *et seq.* Esa escritura fue presentada, el 28 de agosto de 2014, a la sección de Barranquitas del Registro de la Propiedad. La inscripción de la misma, sin embargo, no está en controversia. Por tanto, nada se dirá sobre este particular.

fundamento las faltas recién señaladas. Inconforme, el señor Miranda Meléndez recurrió ante este Tribunal, habiendo interpuesto, en sazón, el correspondiente recurso gubernativo. En éste, sin más, "objeta la calificación del Registrador por ser contraria al Derecho positivo vigente". *Recurso gubernativo*, pág. 4.

En vista de lo anterior, con tal de disponer de la controversia planteada, conviene repasar someramente las normas sobre la partición convencional de la comunidad hereditaria. Esto es, examinar la naturaleza de una partición realizada extrajudicialmente en virtud del convenio unánime de todos los coherederos.

## II

## A

Como se sabe, "[l]a comunidad hereditaria surge al mundo del Derecho cuando fallece una persona con más de un heredero . . ." . Efraín González Tejera, *Derecho de Sucesiones* 399, T. I (2005). Véase *Vega Montoya v. Registrador*, 179 D.P.R. 80, 87 (2010); *Soc. de Gananciales v. Registrador*, 151 D.P.R. 315, 317 (2000); *Cintrón Vélez v. Cintrón de Jesús*, 120 D.P.R. 39, 48 (1987). En ésta, "cada heredero tiene, en principio, una titularidad global sobre el patrimonio hereditario *relicto*, si bien limitada por la concurrencia de otro u otros herederos que tienen un derecho cualitativamente idéntico, aunque puede ser cuantitativamente distinto". Luis Roca-Sastre Muncunill, *Derecho de Sucesiones* 7, T. IV (2000). En cuanto a sus

rasgos esenciales respecta, la comunidad hereditaria se caracteriza por ser (1) universal, "por cuando recae sobre la unidad patrimonial de la herencia"; (2) forzosa, "en cuanto surge con independencia absoluta de la voluntad de los titulares", y (3) transitoria, "pues se constituye por la ley para disolverse por la partición". *Kogan v. Registrador*, 125 D.P.R. 636, 651 (1990) (citando a José Castán Tobeñas, *Derecho Civil español, común y floral* 289-99, T. VI, Vol. I (8va ed. 1978)).Véase, también, José A. Cuevas Segarra & Antonio Román García, *Derecho Sucesorio Comparado. Puerto Rico y España* 134 (2003).

En lo que respecta a su regulación positiva en nuestro Código Civil, éste no contiene disposiciones específicas que atiendan las complejidades que tal comunidad suscita, si bien reconoce su existencia cuando trata de su partición.[4] *Vega Montoya,* 179 D.P.R. en la pág. 87; *Soc. de Gananciales*, 151 D.P.R. en la pág. 318; *Cintrón Vélez*, 120 D.P.R. en la pág. 49. Por consiguiente, este Tribunal ha dispuesto que, en ausencia de normas detalladas, este tipo de comunidad se regirá, en orden de prelación, por: "(1) las disposiciones imperativas del Código Civil; (2) la voluntad del causante; (3) las disposiciones que le sean aplicables sobre división de la herencia, y (4) las disposiciones generales sobre

---

[4] Tal reconocimiento se cifra en el presupuesto de que al momento de partirse la herencia los coherederos se encuentran en un estado de indivisión con respecto al caudal relicto. Véase, en particular Cód. Civ. P.R. Arts. 1005-1034, 31 L.P.R.A. secs. 2857-2919.

comunidad de bienes que sean compatibles con el carácter universal de este tipo de comunidad". *Vega Montoya,* 179 D.P.R. en las págs. 88-89 (citando a *Kogan*, 125 D.P.R. en la pág. 363; *Cintrón Vélez*, 120 D.P.R. en la pág. 49).

**B**

Como se dijo, nuestro Código Civil reconoce la existencia de la comunidad hereditaria *implícitamente*, si se quiere, en tanto contempla ésta en su fase de terminación, es decir, *partición*. Sobre la misma, en general, cabe decir que ésta

> es el *acto jurídico, unilateral* o *plurilateral, necesario* e *irrevocable*, de naturaleza *declarativa*, compuesto de un conjunto ordenado de operaciones verificadas sobre ciertas bases o supuestos de hechos y de Derecho, y en el cual, después de determinarse el *activo* y el *pasivo* de la masa hereditaria y de proceder a su *avalúo* y *liquidación*, se fija el *haber* de cada partícipe, se *divide* el caudal partible y se adjudica cada lote de bienes formados a cada heredero respectivo, provocando la *transformación* de las participaciones abstractas de los coherederos sobre el patrimonio relicto (derecho hereditario) en titularidades concretadas sobre bienes determinados (dominio o propiedad exclusiva u ordinaria).
>
> Roca-Sastre Muncunill, *supra*, pág. 55 (citas omitidas).

Se colige de lo anterior, pues, que la partición constituye el momento en el cual se resuelve la indivisión en torno a la cual gravitan los coherederos. En nuestro ordenamiento, además, es norma firmemente establecida que la naturaleza de ésta comporta efectos declarativos, o

adjudicativos, y no traslativos.[5] Véase, entre otros, *Díaz v. Registrador*, 107 D.P.R. 233, 236 (1978); *Shivell v. Boscio*, 92 D.P.R. 400, 409-10 (1965). Es decir, según esta concepción de la partición,

> [se] reputa a cada heredero haber sucedido sólo e inmediatamente al causante en todos los bienes contenidos en su hijuela. Se entiende que nunca tuvo la propiedad de los bienes del caudal adjudicados a los demás partícipes. Según esta doctrina, el heredero sólo tiene un causahabiente, el *causante* o *de cuius*, de manera que por ficción jurídica se entiende que ha tenido la propiedad de los bienes adjudicados desde la apertura de la sucesión. Como dicen unos tratadistas, la partición es declarativa, esto es: 'explica qué bienes ha heredado efectivamente cada coheredero desde la apertura de la sucesión directamente del causante sin intervención de los coherederos ni mediante supuestas operaciones conmutativas.
>
> González Tejera, *supra*, pág. 403 (citando a José L. Lacruz Berdejo & Francisco Sancho Rebullida, *Derecho de Sucesiones* 204, Vol. I (1971)).

En vista de lo anterior, la partición en nuestro ordenamiento meramente *declara* o *adjudica* lo que a cada

---

[5] Es menester notar, empero, que, en la doctrina científica, existe controversia en lo que respecta a la naturaleza jurídica de la partición de la comunidad hereditaria. Véase, por ejemplo, José L. Lacruz Berdejo, *Elementos de Derecho Civil* 108-110, T. V. (4ta ed. 2009); José Puig Brutau, *Fundamentos de Derecho Civil* 400-11, T. V, Vol. III (1984). Tal disputa, y al margen de posiciones intermedias, se reduce a determinar la raigambre germánica o románica de ésta. Ello, pues según se caracterice la comunidad hereditaria en un sentido u otro, la partición habrá de surtir efectos declarativos o traslativos respectivamente. Véase Ana Cristina Gómez Pérez & Yedaris M. Figueroa Collazo, *El registro y la inscripción de la comunidad de bienes*, 81 Rev. Jur. U.P.R. 299, 304 (2012); Francisco Bonet Ramón, *Compendio de Derecho Civil* 820-21, T. V (1965). En nuestro ordenamiento, sin embargo, no cabe duda de que la comunidad hereditaria tiene atributos propiamente germánicos y que la partición "es un acto declarativo sin efectos atributivos, traslativos o dispositivos, sino efectos distributivos". *Díaz*, 107 D.P.R. en la pág. 236 (citas omitidas).

heredero corresponde. *Pagán Rodríguez*, 177 D.P.R. en la pág. 543 ("Cuando los comuneros se adjudican los bienes, realizan un acto de adjudicación consecutiva a un acto divisorio y no una transmisión de dominio".) (citas omitidas);[6] Eduardo A. Zannoni, *Derecho de las Sucesiones* 629-30 (4ta ed., 1ra reimpresión, 2001). Más importante aún, esta operación supone que el heredero adjudicatario poseyó y tuvo para sí exclusivamente, en su patrimonio, lo adjudicado, desde el momento mismo en que se abrió la herencia. En efecto, se trata de una ficción jurídica, mediante la cual el título del causahabiente –el heredero-desciende directamente del causante, sin que haya de ser considerada la comunidad hereditaria en sí misma como un estado intermedio de titularidad.[7] Es decir, lo que se le adjudique a determinado heredero proviene directamente del causante y no de la comunidad hereditaria, la cual –huelga decirlo- no tiene personalidad jurídica propia. *Kogan*, 125 D.P.R. en la pág. 656.

En cuanto a la tipología que presenta la operación particional, nuestro Código Civil dispone, a lo sumo, tres maneras de efectuar ésta. En primer lugar, el testador,

---

[6] Dado que en *Pagán Rodríguez* se trataba de una comunidad post-ganancial, conviene precisar que este Tribunal ha comparado ese tipo de comunidad con la comunidad hereditaria. *Pagán Rodríguez*, 177 D.P.R. en la pág. 533. Ello, en atención a las características peculiares de ambas. *Id.*

[7] *Cf.* Cód. Civ. P.R. Art. 369, 31 L.P.R.A. sec. 1443 ("La posesión de los bienes hereditarios se entiende trasmitida al heredero sin interrupción y desde el momento de la muerte del causante . . .".); *Sucn. Maldonado v. Sucn. Maldonado*, 166 D.P.R. 166, 177-78 (2005).

por sí mismo, podrá partir la herencia, según estime conveniente. Cód. Civ. P.R. Art. 1009, 31 L.P.R.A. sec. 2875.[8] De otra parte, y subsumible bajo este tipo, el testador también podrá encomendarle a un comisario que se encargue de efectuar ésta. Cód. Civ. P.R. Art. 1010, 31 L.P.R.A. sec. 2876. En segundo lugar, los coherederos, mediante acuerdo unánime, podrán partir la herencia como estimaren conveniente. Cód. Civ. P.R. 1011, 31 L.P.R.A. sec. 2877. Por último, cuando los coherederos no lograren convenir en la forma de partir la herencia, ésta podrá llevarse a cabo judicialmente. Cód. Civ. P.R. Art. 1012, 31 L.P.R.A. sec. 2878. Ciñéndonos a los hechos particulares que presenta el caso ante nuestra consideración, conviene explorar los pormenores normativos del tercer tipo, esto es, la partición convencional.

## C

El artículo 1011 de nuestro Código Civil permite que "[c]uando el testador no hubiese hecho la partición, ni encomendado a otro esta facultad, [y] si los herederos fueren mayores y tuvieren la libre administración de sus bienes, [éstos] podrán distribuir la herencia de la manera que tengan por conveniente". Cód. Civ. P.R. Art. 1011, 31

---

[8] Este tipo de partición "[e]s, . . ., un supuesto muy particular, pues no habiéndose formado todavía la 'comunidad hereditaria', resulta anómala y extraña esta figura particional de una situación comunitaria que todavía no se ha producido". Federico Puig Peña, *Compendio de Derecho Civil español* 31, T. VI (3ra ed. 1976). Para una discusión más pormenorizada sobre el particular, véase Roca-Sastre Muncunill, *supra*, págs. 93-121.

L.P.R.A. sec. 2877. Véase, por ejemplo, *Comentarios al Código civil y compilaciones forales* 346, T. XIV, Vol. II (dir., Manuel Albaladejo) (1989) (comentario de Juan Vallet de Goytisolo).[9] Así, dicho artículo consagra el consentimiento unánime entre coherederos como una de las posibilidades para verificar la partición de la comunidad hereditaria. Sin embargo, dada la amplitud de la potestad conferida por el Código, conviene puntualizar su alcance, en aras de delimitar el margen de liberalidad que tienen los coherederos al convenir en la forma y modo de partir el caudal relicto que los vincula.

En primer lugar, es menester precisar que la naturaleza jurídica de este tipo de partición es la de un contrato, "porque se funda en varias declaraciones de voluntad". Puig Brutau, *Fundamentos de Derecho Civil* 400, T. V, Vol. III (1984). Por tal razón, la partición convencional ha sido caracterizada como un "contrato plurilateral, al que cada . . . [coheredero] concurre con interés opuesto al de los otros". José L. Lacruz Berdejo, *Elementos de Derecho Civil* 117, T. V (4ta ed. 2009). Asimismo, y dada la contrariedad potencial de los intereses concernidos, esta partición requiere la

---

[9] Para una síntesis de la normativa sobre el artículo que nos ocupa, y que versa sobre asuntos que rebasan los límites de la controversia ante nuestra consideración, véase Enid Martínez Moya, *El Derecho Sucesorio Puertorriqueño*, 67 Rev. Jur. U.P.R. 1, 45 (1998).

unanimidad de los coherederos. *Id.*[10] De otra parte, "[e]n cuanto a la forma, se entiende que la partición [convencional] de herencia se rige por el principio espiritualista, que no la requiere especial, independientemente del valor que pueda conferirle su otorgamiento en escritura pública dotándole de autenticidad y acceso a los registros públicos". Juan Vallet de Goytisolo, *Panorama del Derecho de Sucesiones* 931, T. II (1984).

En virtud de lo anterior, en la partición convencional "rigen como regla general las reglas de los contratos . . .". *Comentario del Código Civil* 600, T. 5 (coord., Ignacio Serrano Gil de la Cuesta) (2000) (comentario de Jesús Corbal Fernández). Por tanto, los coherederos que partieren su herencia convencionalmente deberán hacerlo ateniéndose en todo momento a los límites que coartan, precisamente, la libertad contractual. González Tejera, *supra*, pág. 434. Esto es, la partición hereditaria que pactaren no podrá contravenir la ley, la moral o el orden público. Cód. Civ. P.R. Art. 1207, 31 L.P.R.A. sec. 3372; véase, también, Carlos Lasarte, *Principios de Derecho civil* 400, T. VII (3ra ed. 2003).

Por último, como se deduce de lo anterior, el artículo 1011 del Código Civil es un "precepto . . . [que]

---

[10] No debe perderse de vista que en el presente caso todos los coherederos son mayores de edad, con plena capacidad para manejar y enajenar sus bienes. Por consiguiente, valga señalar que lo resuelto en esta Opinión se limita a tales circunstancias.

consagra un principio de autarquía distributiva . . .".

Federico Puig Peña, *Compendio de Derecho Civil español* 67,

Vol. VI (3ra ed. rev. 1976). La libertad conferida por tal

principio

> resulta suficientemente subrayad[a] en el inciso
> final del artículo 1.058 [-equivalente *verbatim* de
> nuestro artículo 1011-], conforme al cual los
> coherederos 'podrán distribuir la herencia *de la
> manera que tengan por conveniente*', expresión de
> gran fuerza gramatical que pretende resaltar que,
> si resulta procedente la partición convencional .
> . ., los herederos podrán partir los bienes
> incluso sin necesidad de observar lo prescrito por
> el testador . . .".

> Lasarte, *supra*, pág. 400. *Cf.* Efraín González
> Tejera, *Derecho de Familia y Derecho Sucesorio*, 60
> Rev. Jur. U.P.R. 1053, 1073 (1991).

Incluso, siendo los coherederos mayores de edad y

plenamente capaces -tal y como lo son en el caso que nos

atañe-, éstos podrán partir la herencia sin ceñirse al

"principio de igualdad cualitativa en la partición, es

decir, formación de lotes de bienes de igual naturaleza o

calidad". *Sucn. Sepúlveda Barreto v. Registrador*, 125

D.P.R. 401, 407 (1990).

En fin, evaluado el ámbito de libertad del que gozan

los coherederos cuando deciden, unánimemente, partir la

herencia mediante convenio, "[n]o hay razón alguna para

negarle a los herederos plena soberanía en la distribución

de los bienes relictos siempre que los acuerdos no

contravengan la ley, la moral o el orden público". *Id.* en

la pág. 408. De otra parte, el cabal reconocimiento de

esta libertad no ha de incidir en la naturaleza del acto mismo –la partición-, que es indudablemente declarativa.

Examinado el Derecho aplicable, procede evaluar los pormenores fácticos de la controversia a la luz de éste.

## III

Como se dijo en la relación de hechos, en el caso que nos ocupa, al señor Miranda Meléndez –el peticionario- se le adjudicó un inmueble perteneciente a las sucesiones de Elena Meléndez Ocasio y Neptuín Miranda Archilla, en virtud del consentimiento unánime de todos los coherederos de ambos, entre los que se encontraba el propio peticionario.[11] Asimismo, los coherederos que convinieron en dicha adjudicación cedieron y renunciaron a cualquier posible reclamo o derecho que pudiera surgir a raíz de ésta. Por último, declararon conspicuamente que la adjudicación en cuestión era hecha *amistosamente*, conforme lo resuelto por este Tribunal en *Sucn. Sepúlveda Barreto v. Registrador*, 125 D.P.R. 401, 407 (1990). Los comparecientes, también, invocaron lo resuelto por este Tribunal en *Pagán Hernández v. Registradora*, 177 D.P.R. 522 (2009), con tal de despejar cualquier duda en torno a la naturaleza adjudicativa de la escritura que

---

[11] De las constancias de la escritura que otorgaron los coherederos, surge que el inmueble en cuestión era el único bien que restaba por adjudicar en ambas sucesiones. Nótese, además, que éstas eran dueñas del inmueble en igual proporción.

sancionaron. [12] En esencia, adujeron que dado que la partición, en virtud de su naturaleza declarativa, meramente modifica el dominio, no cabe hablar de donación en este caso.

El Registrador, por su parte, arguyó que la adjudicación del inmueble a favor del señor Miranda Meléndez, sin que los demás coherederos recibieran una contraprestación, configuraba una donación, para cuya inscripción se precisaba el correspondiente relevo del Departamento de Hacienda.

Evaluadas las contenciones de las partes a la luz del Derecho aplicable, y no existiendo duda alguna sobre la naturaleza declarativa de la partición hereditaria en nuestro ordenamiento jurídico, resolvemos que la partición convencional practicada por los comparecientes en este caso no constituye una donación. Ello, puesto que, jurídica y conceptualmente, lo contrario desnaturalizaría la figura particional convencional que recoge el artículo 1011 del Código Civil. Además, como bien señala el peticionario, en gran medida, nuestro precedente en *Sucn. Sepúlveda Barreto* resuelve, sin más, el asunto que nos atañe.

En *Sucn. Sepúlveda Barreto* este Tribunal resolvió que, en el contexto de una partición convencional en las que los coherederos no se hayan atenido al principio de

---

[12] Debido a que la naturaleza declarativa de la partición no está en duda en nuestro ordenamiento, la discusión de *Pagán Hernández* es innecesaria.

igualdad cualitativa, las disparidades resultantes entre sus hijuelas no debían ser consideradas una donación. Ello, puesto que

> [e]l título de la sucesión siempre es el testamento o la declaratoria de herederos, pero ya hemos visto cómo a través de la partición todos los integrantes de la sucesión pueden prescindir o variar la voluntad real o presunta del causante. Aunque cuando esto ocurre en efecto se realiza una adquisición hereditaria seguida de otro negocio de transmisión, la adjudicación de los bienes del caudal queda jurídicamente entroncada con la disposición sucesoria. Registralmente ocurre una aplicación más del principio de tracto abreviado, ya que el negocio intermedio no se refleja en el Registro de la Propiedad y se acude "a la ficción de que la cosa adjudicada ha pasado directamente del transmitente al adjudicatario . . .".

> *Sucn. Sepúlveda Barreto*, 125 D.P.R. en las págs. 409-10 (citas omitidas).

Así, es incuestionable el carácter declarativo de la partición. Más aún, no cabe hablar de donación en el contexto de una partición hereditaria, salvo que exista prueba preponderante de que los herederos acordaron realizarla. Véase González Tejera, *supra*, pág. 435. Tal prueba, en cualquier caso, deberá permitir inferir el ánimo de liberalidad de los coherederos.

En el caso que nos ocupa, los coherederos señalaron expresamente que acordaban *con carácter amistoso* la adjudicación del inmueble restante de la comunidad hereditaria. El carácter amistoso, sin embargo, no se refiere tanto a la causa, como al hecho indispensable de que los coherederos convengan unánimemente y extrajudicialmente en cómo efectuar la partición. Véase

Roca-Sastre Muncunill, *supra*, pág. 171 ("[P]ara que pueda practicarse extrajudicialmente o de un modo amistoso la partición entre los herederos, se requiere *unanimidad . . .*".). Después de todo, "[l]a causa del contrato es la función económica y social que el mismo debe llenar o cumplir". *B.P.P.R. v. Sucn. Talavera*, 174 D.P.R. 686, 702 (2008) (citando a Luis Diez-Picazo, *Fundamentos de Derecho Civil Patrimonial* 881, Vol. I (2da ed. 1983)).

Así, siendo la partición convencional un contrato, la causa de ésta es la resolución de la indivisión que supone la comunidad hereditaria. Nótese, además, que significar como una donación la operación particional convenida unánimemente entre los coherederos contravendría la naturaleza declarativa de ésta. Ello, toda vez que la donación es un acto jurídico de naturaleza propiamente traslativa, cuya causa se cifra en la liberalidad del donante. Véase, por ejemplo, Puig Brutau, *supra*, Vol. II, págs. 327-30.

Por tanto, es forzoso concluir que la adjudicación del inmueble en cuestión a favor del peticionario –señor Miranda Meléndez– no configura una donación, cuya inscripción en el Registro de la Propiedad requiera presentar el certificado de cancelación de gravamen tributario expedido por el Departamento de Hacienda.

**IV**

En mérito de lo antes expuesto, no proceden las faltas notificadas por el Registrador de la Propiedad

recurrido y, en consecuencia, se revoca su nota y se ordena la calificación de la escritura concernida, de conformidad con lo aquí resuelto.

Se dictará sentencia de conformidad.

Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Gerardo Miranda Meléndez<br><br>Recurrente<br><br>v.<br><br>Hon. Joaquín del Río Rodríguez<br>Registrador de la Propiedad,<br>Sección de Barranquitas<br><br>Recurrido | RG-2014-0004 |

SENTENCIA

San Juan, Puerto Rico, a 2 de octubre de 2015

Por los fundamentos que anteceden, no proceden las faltas notificadas por el Registrador de la Propiedad recurrido y, en consecuencia, se revoca su nota y se ordena la calificación de la escritura concernida, de conformidad con lo aquí resuelto.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. El Juez Asociado señor Estrella Martínez concurre con las siguientes expresiones:

Concurro con la Opinión emitida por este Tribunal por entender que lo aquí dispuesto fue resulto en Sucn. Sepúlveda Barreto v. Registrador, 125 DPR 40 (1990). En aquella ocasión, este Tribunal dispuso que en una partición convencional por acuerdo unánime de los herederos no hay que cumplir con el principio de igualdad cualitativa. Además, rechazamos expresamente que tal distribución desigual constituya una donación, por lo que nada impedía la inscripción de la partición convencional acordada en el Registro. Íd., págs. 409-410.

María I. Colón Falcón
Secretaria del Tribunal Supremo Interina