EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Lcdo. José Luis Riefkohl Soltero, Registrador de la Propiedad, Caguas Segunda Sección<br><br>Peticionario<br><br>v.<br><br>Pentagon Federal Credit Union<br><br>Recurrida | Certiorari<br><br>2025 TSPR 89<br><br>216 DPR \_\_\_ |

Número del Caso: RG-2024-0003


Fecha: 9 de septiembre de 2025


Representante legal de la parte peticionaria:

    Por derecho propio


Representantes legales de los *Amici Curiae*:

    **Colegio Notarial de Puerto Rico**
    Lcdo. Manuel R. Pérez Caballer

    **Liga de Cooperativa de Puerto Rico**
    Lcda. Irma N. Torres Suarez

    **Cooperativas de Ahorro y Crédito de Las Piedras, Cabo Rojo, Sagrada Familia La Puertorriqueña y Los Hermanos**
    Lcdo. José J. Belén Rivera


Materia: Derecho Registral – Improcedencia de la exención arancelaria registral concedida a las cooperativas cuando la operación no constituye un negocio jurídico a favor de la entidad.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Lcdo. José Luis Riefkohl Soltero, Registrador de la Propiedad, Caguas Segunda Sección<br><br>Peticionario<br><br>v.<br><br>Pentagon Federal Credit Union<br><br>Recurrida | RG-2024-0003 |

Opinión del Tribunal emitida por la Jueza Asociada RIVERA PÉREZ.

En San Juan, Puerto Rico a 9 de septiembre de 2025.

En esta ocasión, nos corresponde determinar si el Registrador de la Propiedad actuó conforme a derecho al denegar la inscripción de una escritura de cancelación de una hipoteca presentada por la cooperativa Pentagon Federal Credit Union (PenFed), tras considerar que la operación no cualificaba para la exención arancelaria dispuesta en la Ley Núm. 114 de 12 de julio de 1960, *infra*, y la Ley Núm. 255-2002, *infra*. A tales efectos, evaluamos si la cancelación solicitada por PenFed constituye un negocio jurídico "a favor" de la cooperativa que justifique la dispensa, conforme a la norma establecida en *Coop. Ahorro San Blas v. Registradora*, 201 DPR 544 (2018), y reafirmada en *Coop. Ahorro Isabela v. Registrador*, 213 DPR 508 (2024).

Luego de examinar con detenimiento el expediente ante nuestra consideración, concluimos que el Registrador actuó correctamente al denegar la inscripción de la escritura de cancelación por falta de pago de los aranceles correspondientes.

Procedemos a exponer las razones que sustentan nuestra determinación.

I

El 11 de agosto de 2017, los señores Orlando Vázquez Pacheco y Verónica Fonseca García, entonces titulares registrales de la Finca Núm. 15386, ubicada en la Urbanización Isla de Roque Estates del municipio de Barceloneta, constituyeron una hipoteca sobre dicho bien inmueble en garantía de un pagaré suscrito a favor de Sun West Mortgage Company, Inc., o a su orden (*Primera Hipoteca*).[1]

El 10 de septiembre de 2021, los referidos titulares vendieron la Finca Núm. 15386 a los señores Juan Cardona Vélez y Gisella Malavé Vélez, socios de PenFed.[2] Ese mismo día, los compradores suscribieron un pagaré a favor de la cooperativa, y aseguraron su cumplimiento mediante la constitución de una hipoteca sobre la finca (Segunda Hipoteca).[3] Como parte de la transacción, el pagaré hipotecario pagadero a favor de Sun West Mortgage Company, Inc., o a su orden, fue transferido por endoso a PenFed.

Así las cosas, el 19 de marzo de 2024, PenFed otorgó la Escritura Núm. 125 sobre *Cancelación de Pagaré Hipotecario* ante

---

[1] Véase, Anejo C del Recurso Gubernativo. La hipoteca quedó debidamente constituida mediante la inscripción en el Registro de la Propiedad de la Escritura Núm. 262 sobre constitución de hipoteca, otorgada el 11 de agosto de 2017 ante el notario Rafael Maldonado Pérez.

[2] Escritura Núm. 31 sobre compraventa, otorgada el 10 de septiembre de 2021 ante la notaria Lizbeth Avilés Vega.

[3] La hipoteca quedó debidamente constituida mediante la inscripción en el Registro de la Propiedad de la Escritura Núm. 160 sobre constitución de hipoteca, otorgada el 10 de septiembre de 2021 ante el notario Osvaldo Toledo García.

el notario Carlos M. Rivera Corujo (Escritura Núm. 125). Mediante esta escritura, PenFed, como endosataria del pagaré originalmente emitido a favor de Sun West Mortgage Company, Inc., solicitó la cancelación del asiento registral donde constaba inscrita la *Primera Hipoteca*.[4] En el párrafo **PRIMERO** de la Escritura Núm. 125, PenFed expuso que era el "tenedor por entrega del pagaré suscrito por Orlando Vázquez Pacheco y Verónica Beatriz Fonseca García […] a favor de Sun West Mortgage Company, Inc., o a su orden [,] garantizado con hipoteca según consta en la escritura número doscientos sesenta y dos […]".[5] Asimismo, en el párrafo **CUARTO**, expuso que:

> [E]l compareciente Pentagon Federal Credit Union tiene un interés directo en la inscripción de esta transacción **para que una nueva hipoteca otorgada previamente por la Cooperativa ostente rango preferente.** A tales efectos, no es la [sic.] aplicación de la decisión de Cooperativa de Ahorro y Crédito de Isabela vs. Registrador (2024 TSPR 11); por lo que procedería la inscripción sin la necesidad del pago de aranceles de inscripción a tenor con la Ley 255-2002, según enmendada.[6] (Negrilla suplida).

Por su parte, el notario autorizante hizo constar en el párrafo **SEGUNDO** de la escritura lo siguiente:

> Siendo la institución compareciente la actual dueña, tenedora y poseedora por endoso del referido pagaré por entrega que del mismo se le hizo **para su cancelación solamente, y por no adeudarse cantidad alguna bajo el mismo, cancelada dicha hipoteca,** consiente a su cancelación en el Registro de la Propiedad correspondiente y me entrega a mí, el Notario, el susodicho pagaré para que lo inutilice, lo cual yo, el Notario, hago estampando el sello de goma que lee "CANCELADO", después de haberme cerciorado de que el referido pagaré está debidamente endosado por su tenedor original y sus tenedores

---

[4] Véase, Anejo C del Recurso Gubernativo.

[5] Véase, Anejo C del Recurso Gubernativo.

[6] Íd.

subsiguientes y a favor de la parte compareciente, completándose así la cadena de endosos necesarios para que el endoso a favor de la compareciente sea eficaz en derecho luego de lo cual procederé a unirlo al original de esta escritura para que forme parte de mi protocolo.[7] (Negrilla suplida).

Posteriormente, el 3 de abril de 2024, PenFed presentó la referida escritura ante el Registro de la Propiedad, a través del sistema KARIBE.[8] El documento se presentó como exento del pago de los aranceles registrales prescritos para esta operación.

Tras calificar el documento, el Registrador de la Propiedad, Lcdo. José L. Riefkohl Soltero (Registrador), denegó la inscripción de la escritura de cancelación presentada por PenFed al concluir que el acto no constituía un negocio jurídico "a favor" de la cooperativa que justificara la exención reclamada. Esta determinación se fundamentó en la norma establecida en *Coop. Ahorro San Blas v. Registradora*, *supra*, y *Coop. Ahorro Isabela v. Registrador*, *supra*.[9] Apuntó, además,

---

[7] Íd.

[8] Íd. La escritura se presentó en la Sección I de Manatí, al Asiento Núm. 2024-037167-MA01.

[9] Véase, *Carta de notificación* sobre *faltas del documento* de 7 de octubre de 2024, Anejo D del Recurso Gubernativo. En específico, el Registrador señaló lo siguiente:

> […] La exención de derechos solo está disponible para las cooperativas cuando éstas solicitan la inscripción de un negocio a su favor. Deberá anejar copia certificada de la escritura presentada a este asiento con los sellos de rentas internas. En adición, deberá consignar derechos de inscripción por $406.00; derechos de presentación $15.00; y [C]ódigo [P]olítico de $0.50. *Coop. de Ahorro y Crédito San Blas [v.] Registrador*, [201 DPR 544 (2018)]; Ley Núm. 91 de 30 de mayo de 1970, según enmendada.
>
> En el curso normal de las transacciones bancarias, le corresponde al vendedor entregar el bien libre de cargas y gravámenes. Por lo tanto, al corresponderle asumir los gastos y honorarios de la cancelación, no le aplica la exención de las

que la escritura no acreditaba que la entidad exenta hubiera asumido los gastos del negocio jurídico y que, por el contrario, resultaba razonable inferir que dichos gastos correspondían al vendedor, conforme a la obligación que los Artículos 1287 y 1288 del Código Civil, 31 LPRA secs. 9991-9992, les imponen a las partes en una compraventa.

Inconforme, el 25 de octubre de 2024, PenFed, por conducto del Lcdo. Rivera Corujo, presentó un *Escrito de recalificación*,[10] en el que impugnó la determinación del Registrador. En síntesis, alegó que PenFed tenía un interés directo en la cancelación de esta hipoteca, ya que esta permitiría la inscripción con rango preferente de una nueva hipoteca constituida para garantizar un pagaré suscrito a su favor, y que, por tanto, procedía la exención contributiva que por ley se les concede a las cooperativas. *Coop. Ahorro San Blas v. Registradora*, 201 DPR 544 (2018).

Como argumento adicional, la parte presentante sostuvo que el pagaré hipotecario originalmente emitido a favor de Sun West Mortgage Company, Inc., había sido transferido por endoso a PenFed, lo que le confería el interés jurídico necesario a la cooperativa para solicitar su cancelación. Además, contestó el

___

cooperativas. Art. 1288 y 1287 del Código Civil de Puerto Rico 2020.

[…] Del documento debe surgir claramente el acuerdo entre las partes sobre los gastos del otorgamiento del documento público. Conforme al Art. 1 y 3 de la Ley 209-2015 y su reglamento Art. 4.1, Segundo párrafo, tiene que surgir del documento que la entidad que goza de la exención es la que asumió el pago de los gastos del negocio jurídico. De lo contrario no le aplica la exención. Esta información es necesaria para cumplir con los [Art.] 10 y 23 de la Ley 209-2015 y sus Reglas relacionadas.

[10] Véase, Anejo E del Recurso Gubernativo.

RG-2024-0003                                                6

señalamiento del Registrador relativo a la necesidad de que constara en el documento que la entidad exenta asumió los gastos del negocio jurídico, indicando que dicho extremo se atendía expresamente en el párrafo **CUARTO** de la Escritura Núm. 125.

El 9 de diciembre de 2024, el Registrador emitió una denegatoria formal, en la que sostuvo su calificación negativa.[11] Transcurridos diez (10) días desde la notificación de la denegatoria, y no habiendo la parte presentante retirado el documento, el 27 de diciembre de 2024, el Registrador presentó ante este Tribunal un recurso gubernativo al amparo del Artículo 245 de la Ley Núm. 210-2015, según enmendada, Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, 30 LPRA sec. 6405, en respaldo de su calificación.

Luego de varios trámites procesales, el Colegio de Notarios de Puerto Rico, la Liga de Cooperativas de Puerto Rico, y las cooperativas de ahorro y crédito Las Piedras, Cabo Rojo, Sagrada Familia, La Puertorriqueña y Los Hermanos presentaron sus respectivas solicitudes para comparecer como *amicus curiae*.[12]

---

[11] Véase, Carta de Notificación sobre Denegatoria de Escrito de Recalificación, Anejo A del Recurso Gubernativo.

[12] En sus comparecencias, los *amicus curiae* formularon planteamientos diversos. El Colegio de Notarios de Puerto Rico solicita que la norma establecida en *Coop. Ahorro Isabela v. Registrador*, 213 DPR 508 (2024), se aplicara prospectivamente y propuso, como punto de partida, para dicha aplicación, la fecha de otorgación de las escrituras públicas.

Por su parte, la Liga de Cooperativas de Puerto Rico abogó por que se confirmara la calificación del Registrador en el presente caso. A su juicio, la cooperativa Pentagon Federal Credit Union (PenFed) no podía acogerse a la exención contributiva en controversia por no ser una cooperativa organizada bajo las leyes de Puerto Rico. Además, solicitó que este Tribunal delimitara con precisión el alcance de las transacciones exentas, a fin de evitar disparidades en la aplicación de la norma.

Este Tribunal declaró con lugar las solicitudes mediante *Resolución*. Posteriormente, el Registrador presentó una réplica a los escritos de los *amicus*.

Expuestos los hechos procesales pertinentes, procedemos a examinar el marco jurídico aplicable a la controversia ante nuestra consideración.

## II

### A.

La Ley Núm. 114 de 12 de julio de 1960, según enmendada, conocida como *"Ley para Eximir a las Sociedades Cooperativas del Pago de Aranceles en el Registro de la Propiedad de Puerto Rico"*, 30 LPRA sec. 1770d *et seq.*, fue promulgada como medida de fomento al desarrollo del movimiento cooperativo en Puerto Rico. El propósito principal de su aprobación fue conceder un alivio contributivo a estas entidades, con la expectativa de que ello estimularía su participación en actividades económicas y su consolidación institucional.

En particular, el Artículo 1 de esta Ley dispone que se exime del pago de toda clase de derechos prescritos para la presentación e inscripción de documentos y demás operaciones en el Registro de la Propiedad de Puerto Rico a las sociedades cooperativas organizadas con arreglo a las leyes de Puerto Rico, así como aquellas sociedades y corporaciones extranjeras que

---

A su vez, las cooperativas de ahorro y crédito Las Piedras, Cabo Rojo, Sagrada Familia, La Puertorriqueña y Los Hermanos se opusieron a la determinación emitida por el Registrador. Argumentaron que en este caso sí procedía la exención contributiva reclamada por PenFed. Asimismo, solicitaron que se reconociera expresamente la aplicabilidad de dicha exención a diversos escenarios en los que las cooperativas comparecen solicitando la cancelación de pagarés hipotecarios.

operen como sociedades cooperativas según la definición contenida en la entonces vigente Ley Núm. 291 de 9 de abril de 1946, según enmendada, conocida como *"Ley General de Sociedades Cooperativas"*, 5 LPRA sec. 881 *et seq.*[13] 30 LPRA sec. 1770d.

La exención también se extiende al pago de los derechos arancelarios notariales dispuestos en la Ley Núm. 101 de 12 de mayo de 1943, según enmendada, conocida como la *"Ley de Arancel Notarial"*, 4 LPRA sec. 851 *et seq.*, siempre que el contrato "disponga de, grave, o enajene sus bienes, así como en toda contratación con sus socios **que se relacione con los fines para los cuales se hayan organizado tales sociedades cooperativas"**. (Negrilla suplida). Íd.

Este último inciso introduce la noción de que el negocio jurídico beneficiado por la exención debe relacionarse con los

---

[13] La Ley Núm. 291 de 9 de abril de 1946, según enmendada, conocida como *"Ley General de Sociedades Cooperativas"*, 5 LPRA sec. 881 *et seq.*, fue derogada y sustituida por la Ley Núm. 50-1994, según enmendada, conocida como la *"Ley General de Sociedades Cooperativas"*. Esta última, a su vez, fue derogada y sustituida por la vigente Ley Núm. 239-2004, según enmendada, conocida como *"Ley General de Sociedades Cooperativas de Puerto Rico de 2004"*, 5 LPRA sec. 4381 *et seq.*

El Artículo 2 (l) de la derogada Ley Núm. 291 del 9 de abril de 1946, *supra*, disponía lo siguiente:

"(l) Sociedad significa las Sociedades Cooperativas que reúnan los siguientes requisitos:
A – Operar a base de control de los socios y funcionar sobre principios de igualdad de derechos y obligaciones en cu[a]nto a sus socios respecta.
B – Tener un número de socios nunca menor de once, salvo lo que se dispone en el párrafo segundo del Artículo 5 de esta Ley, el inciso (…) del Artículo 6 de esta Ley y el párrafo primero del Artículo 13 de la presente Ley.
C – Organizarse con capital que pueda estar o no estar representado por acciones.
D – Conceder a cada socio un voto solamente que deberá ejercitarse personalmente y no por apoderado, excepto en los casos de las Cooperativas de Viviendas, en donde el voto podrá ser transferible dentro de la unidad familiar en los casos en que el socio se encuentre ausente o imposibilitado de ejercer el voto por motivos justificables o en los casos contemplados por el presente orden de sustitución."

fines cooperativistas. *Coop. Ahorro San Blas v. Registradora*, *supra*, págs. 564-565. No basta con que la cooperativa participe formalmente del contrato; debe demostrarse una vinculación sustantiva entre el negocio jurídico y los objetivos institucionales de la cooperativa. Íd.

**B.**

Con el pasar de las décadas, el marco normativo del sector cooperativista fue ampliado y consolidado mediante la Ley Núm. 255-2002, según enmendada, Ley de Sociedades Cooperativas de Ahorro y Crédito de 2002, 7 LPRA sec. 1361 *et seq*. Esta Ley establece un régimen integral para las cooperativas de ahorro y crédito, y reconoce su importancia como actores en el sistema financiero puertorriqueño y como instrumentos del desarrollo económico y social del país.[14]

La Exposición de Motivos de la Ley Núm. 255-2002, *supra*, describe al movimiento cooperativo como "una pieza integral y un fuerte pilar para el desarrollo económico y social del país", con un "alto interés público". A tales efectos, la Asamblea Legislativa articuló una política pública dirigida a: permitir que las cooperativas de ahorro y crédito compitan en igualdad de condiciones con otras instituciones financieras; fomentar su integración con sectores productivos del país; facilitar su incursión en nuevos mercados a través de estructuras

---

[14] El Artículo 1.03 (h) de la Ley Núm. 255-2002, según enmendada, Ley de Sociedades Cooperativas de Ahorro y Crédito de 2002, 7 LPRA sec. 1362, establece que, a los fines de esta Ley, "cooperativa" significa "toda sociedad cooperativa de ahorro y crédito de primer o segundo grado constituida y organizada de acuerdo con esta Ley. Aquellas cooperativas cuyos socios sean entidades cooperativas, se considerarán como cooperativas de segundo grado."

corporativas y operacionales; y promover la canalización de recursos hacia proyectos productivos mediante el crédito cooperativo. Íd.

Como herramienta para alcanzar estos fines, el estatuto establece, entre otros incentivos, un régimen especial de exenciones contributivas. En lo pertinente al caso de autos, el Artículo 6.08(a)(3) de la Ley Núm. 255-2002, 7 LPRA sec. 1366g, dispone que:

> **Las cooperativas y sus subsidiarias o afiliadas estarán exentas** del pago de derechos, arbitrios o aranceles estatales o municipales […] relativos al otorgamiento de toda clase de documentos públicos y privados, **del pago de cargos, derechos, sellos o comprobantes de rentas internas relativos a la inscripción de los mismos en el Registro de la Propiedad** […].[15] (Negrilla suplida).

---

[15] En cuanto a las entidades foráneas, el Artículo 2.05-A(f) de la Ley Núm. 255-2002, 7 LPRA sec. 1362d-1, dispone lo siguiente:

(f) Ninguna entidad cooperativa organizada al amparo de las leyes de otra jurisdicción que no sea la de Puerto Rico podrá hacer negocios aquí, salvo que:
(1) cuente con autorización previa de la Corporación [Corporación Pública para la Supervisión y Seguro de Cooperativas];
(2) cumpla con el registro de inscripción de cooperativas foráneas que establezca la Corporación a tales efectos; y
(3) la Corporación haga una determinación afirmativa de que las cooperativas organizadas al amparo de esta Ley les es permitido operar en la jurisdicción de incorporación de la entidad foránea solicitante.

Toda entidad cooperativa foránea autorizada a operar en Puerto Rico al amparo de esta Ley estará sujeta a las disposiciones aquí descritas y por las de la Ley Núm. 114 de 17 de agosto de 2001, según enmendada, conocida como "Ley de la Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico" y de los reglamentos adoptados a su amparo, así como a todos los poderes de supervisión y fiscalización de la Corporación. Disponiéndose, que no les serán de aplicación las exenciones contributivas dispuestas en esta Ley.

Las normas vigentes en Puerto Rico relativas a la elegibilidad para ser socio y a la elección y composición de los cuerpos directivos serán aplicables en la medida que no estén en conflicto con las leyes del lugar de incorporación de la entidad foránea.".

El Artículo 2.05-A fue incorporado a la Ley Núm. 255-2002, *supra*, mediante la Ley Núm. 308-2006. No obstante, esta última, en su Artículo 3,

El citado texto legal, aunque amplio, no constituye una carta blanca para reclamar exenciones en todo tipo de transacción en que participe una cooperativa. Como veremos más adelante, la normativa exige, implícitamente, que la transacción esté alineada con los fines de la cooperativa y que le represente un beneficio directo. *Ahorro San Blas v. Registradora*, *supra*.

A la luz de este marco normativo, corresponde repasar cómo nuestra jurisprudencia ha interpretado las disposiciones relativas a las exenciones arancelarias registrales concedidas a las cooperativas de ahorro y crédito, particularmente en lo que respecta a su alcance y a las condiciones que deben cumplirse para su procedencia.

---

excluyó expresamente de su aplicación a las cooperativas federales organizadas bajo el *Federal Credit Union Act*, como es el caso de PenFed.

En específico, el Artículo 3 de la Ley Núm. 308-2006, *supra*, dispone que "[q]uedan exentos de las disposiciones de esta Ley [la Ley Núm. 308-2006], las entidades organizadas bajo la "Federal Credit Union Act" u otras leyes federales. Aquellas cooperativas organizadas bajo otras leyes y que cuenten con sucursales operando en Puerto Rico a la fecha de entrada en vigor de esta Ley estarán sujetas a las exigencias de la misma, excepto que no requerirán de la aprobación previa de la Corporación para continuar sus operaciones.".

En consecuencia, estas entidades no están sujetas a las limitaciones mencionadas y, en principio, pueden acogerse a las exenciones contributivas dispuestas en la Ley Núm. 255-2002, *supra*, siempre que cumplan con sus requisitos sustantivos.

Además, cabe destacar que el Artículo 1 de la Ley Núm. 114 de 12 de julio de 1960, según enmendada, conocida como *"Ley para Eximir a las Sociedades Cooperativas del Pago de Aranceles en el Registro de la Propiedad de Puerto Rico"*, 30 LPRA sec. 1770d, también reconoce expresamente la exención a favor de cooperativas extranjeras que operen como sociedades cooperativas, según definidas en la entonces vigente Ley Núm. 291 de 1946 (posteriormente sustituida por la Ley Núm. 50-1994, *supra*, y la Ley Núm. 239-2004, *supra*). Por esta vía adicional, PenFed igualmente se encuentra cobijada por la exención.

**C.**

La Ley Núm. 91 de 30 de agosto de 1970, según enmendada, conocida como *"Ley del Arancel de los Derechos que se han de Pagar por las Operaciones en el Registro de la Propiedad"*, 30 LPRA sec. 1767a *et seq.*, establece el arancel de los derechos que deben pagarse por las operaciones en el Registro de la Propiedad, incluyendo el acto de solicitar una inscripción, anotación, cancelación o liberación. *Coop. Ahorro San Blas v. Registradora*, *supra*, pág. 557. El Artículo 5 de esta Ley dispone que "[n]o se aceptará para presentación en el Registro de la Propiedad de Puerto Rico ningún documento al cual no se acompañe los correspondientes comprobantes de pago del total de los derechos devengados por esta Ley." 30 LPRA sec. 1767d.

La Ley Núm. 91, *supra*, es un estatuto de naturaleza tributaria, por lo que los aranceles que impone tienen carácter de contribución. *Coop. Ahorro San Blas v. Registradora*, *supra*, pág. 557. Véanse, *Pagán Rodríguez v. Registradora*, 177 DPR 522, 536-537 (2009); *Díaz v. Registrador*, 107 DPR 233, 238 (1978). Este Tribunal ha sido consistente en establecer que las exenciones contributivas—por ser excepciones al principio general de igualdad en las cargas públicas— deben interpretarse de manera restrictiva. *Coop. Ahorro Isabela v. Registrador*, *supra*, págs. 518-519. Véanse, *Coop. Ahorro San Blas v. Registradora*, *supra*, pág. 558; *Coop. Ahorro Rincón v. Mun. Mayagüez*, 200 DPR 546, 560 (2018). En caso de ambigüedad, debe prevalecer la interpretación que limite o niegue el privilegio, sin que ello frustre la intención legislativa. *Servicios Legales*

*et al. v. Registradora*, 211 DPR 393, 412 (2023). Véase *Pfizer Pharm. v. Mun. de Vega Baja*, 182 DPR 267, 279 (2011).

En el contexto de las cooperativas, esta doctrina fue aplicada en *Coop. Ahorro San Blas v. Registradora*, *supra*, donde una cooperativa vendió un inmueble a una socia cooperativista y presentó para su inscripción la escritura de compraventa ante el Registro de la Propiedad sin incluir el pago de los aranceles requeridos para este tipo de operación. La cooperativa alegó estar exenta de dicho pago al amparo del Artículo 6.08 de la Ley Núm. 255-2002, *supra*, en virtud de su participación como parte vendedora. Sin embargo, el Registrador denegó la inscripción por falta de pago, lo que motivó la presentación de un recurso gubernativo.

Tras analizar la controversia, este Tribunal concluyó que, conforme al Artículo 1344 del Código Civil de 1930, 31 LPRA ant. sec. 3751, correspondía a la parte compradora asumir los gastos posteriores al otorgamiento de la escritura, incluyendo los aranceles de presentación e inscripción en el Registro de la Propiedad. En ese caso, las partes pactaron expresamente que dichos gastos recaerían sobre la compradora, la señora González De Jesús, quien no podía beneficiarse de la exención arancelaria concedida por ley a la cooperativa. Por tanto, la Cooperativa, al invocar el referido artículo como base del acuerdo, quedó impedida de reclamar la exención contributiva para esa transacción. *Coop. Ahorro San Blas v. Registradora*, *supra*, pág. 561.

En esa ocasión, este Tribunal explicó que la exención arancelaria dispuesta en la Ley Núm. 255-2002, *supra*, aplicaba únicamente cuando el negocio jurídico que se pretendía inscribir en el Registro de la Propiedad fuera a favor de la cooperativa. Íd., págs. 561-565. Señalamos que nada en esa Ley permitía concluir que la exención pudiera transferirse o extenderse a terceros. Íd. Indicamos, además, que, tratándose de una exención contributiva, esta debía surgir expresamente en la ley, y que, en caso de duda, debía resolverse en contra de su existencia, por tratarse de un privilegio excepcional concedido por el Estado. Íd. Véase, además, *E.U.A. v. Registrador*, 116 DPR 261 (1986).

También expresamos que la Ley Núm. 255-2002, *supra*, y la Ley Núm. 30 de 13 de junio de 1958, según enmendada, conocida como *"Ley para Eximir al ELA y sus Agencias del Pago de Aranceles en el Registro de la Propiedad de Puerto Rico"*, 30 LPRA sec. 1779c *et als.*, estaban huérfanas de toda expresión que evidenciara un propósito legislativo dirigido a extender este beneficio contributivo a quienes hacen negocios con cooperativas. *Coop. Ahorro San Blas v. Registradora*, *supra*. Precisamos que el fin de la exención era propiciar la inscripción de bienes inmuebles a favor de estas entidades como mecanismo para desarrollar su potencial adquisitivo y promover su inserción en el mercado. Concluimos que extender ese beneficio a un tercero no adelantaba dicho objetivo. Íd.

Esta norma fue reafirmada recientemente en *Coop. Ahorro Isabela v. Registrador*, *supra*, donde establecimos que la mera

intervención de la cooperativa como parte otorgante no transforma automáticamente el acto en uno a su favor. La exención arancelaria registral dispuesta en la Ley Núm. 255-200, *supra*, no es procedente cuando el negocio que se pretende inscribir beneficia principalmente a terceros, aun si el resultado financiero indirecto pudiera favorecer a la cooperativa. Íd., págs. 520-521. Como expresamos en ese caso:

> [L]a hipoteca que se pretende cancelar mediante la Escritura Núm. 349 sobre cancelación de hipoteca proviene de un pagaré hipotecario suscrito por el Sr. Jaime Castro Lamas y la Sra. Madeline C. Castro (socios cooperativistas), otorgado a favor de la Cooperativa. Así, una vez que los socios cooperativistas saldaron la deuda podía otorgarse la escritura de cancelación de hipoteca, con el propósito de que ese gravamen en su contra no permaneciera en el Registro de la Propiedad. **A todas luces, vemos que la cancelación del gravamen opera a favor de los socios cooperativistas quienes son los titulares registrales de la propiedad y quienes ya no son deudores hipotecarios.** Así, son ellos quienes se benefician de ajustar el contenido del Registro de la Propiedad a la realidad extra registral.
>
> **El interés que pueda tener la Cooperativa en que el gravamen cese de estar inscrito a su favor no activa la exención. Esto es así, pues es insuficiente para equipararlo con un negocio jurídico presentado para su inscripción en el Registro de la Propiedad a favor de la Cooperativa. Sería incorrecto obviar el texto claro de la ley y otorgar una exención donde el legislador no la concedió. No vemos cómo distanciarnos de ese racional, pues fue el que utilizamos en el caso de <u>Coop. San Blas v. Registrador</u> […].**
>
> **En esa misma línea, recuérdese que el propósito de la exención que cobija a las cooperativas es adelantar la inscripción de bienes inmuebles a favor de estas para desarrollar su poder adquisitivo y, consecuentemente, su inserción en el mercado.** De manera que concederles a los deudores hipotecarios la [exención], por conducto de la Cooperativa, en nada aporta al objetivo de la Ley de Cooperativas. **Entiéndase que la mera comparecencia de la Cooperativa en la Escritura Núm. 349 sobre cancelación de hipoteca y no de quien fuera el deudor**

**hipotecario no configura un negocio a favor de la Cooperativa, por lo que no activa la exención contributiva a su favor.**

Finalmente, como la Escritura Núm. 349 sobre cancelación de hipoteca beneficia a los deudores hipotecarios y no a la Cooperativa y, por consiguiente, no estamos ante un negocio jurídico que opere a su favor procede la cancelación de los aranceles correspondientes, según señaló el Registrador de la Propiedad. (Notas al calce omitidas). (Negrilla suplida). *Coop. Ahorro Isabela v. Registrador*, *supra*.

En armonía con esta línea jurisprudencial, entendemos necesario consolidar los criterios que guían la procedencia de la exención arancelaria registral a favor de las cooperativas. Por tanto, para que aplique la exención del pago de aranceles registrales, de las escrituras presentadas por una cooperativa ante el Registro de la Propiedad, así como sus documentos complementarios, deberá desprenderse que la escritura, la operación o el negocio jurídico subyacente a ella tienen un beneficio jurídico sustantivo, inmediato y directamente atribuible a la cooperativa. Para ello, no será suficiente que las consecuencias colaterales, los impactos indirectos, los efectos eventuales o los resultados remotos de la operación aprovechen a la cooperativa. Se requerirá que la escritura, la operación o el negocio jurídico subyacente a ella constituyan, en sí, una expresión de los fines institucionales de la cooperativa y tengan un beneficio jurídico <u>directo</u> a la entidad.

**III**

A la luz de las disposiciones legales y los criterios jurisprudenciales expuestos, nos corresponde determinar si la cancelación de la hipoteca solicitada por PenFed constituye un

negocio jurídico a favor de la cooperativa que justifique la aplicación de la exención contributiva reclamada.

En su *Escrito de recalificación*, PenFed alegó que la cancelación perseguía asegurar el rango preferente de una hipoteca posterior constituida a su favor.[16] No obstante, conforme a la norma que pautamos, para que proceda la exención arancelaria registral debe desprenderse de la faz de la escritura presentada por la cooperativa que la operación redunde en un beneficio jurídico sustantivo, inmediato y directamente atribuible a esa entidad. No basta que la operación genere efectos colaterales, impactos indirectos o beneficios eventuales; debe tratarse de un acto que constituya una manifestación concreta de los fines institucionales de la cooperativa y que produzca un beneficio jurídico directo a su favor. Aplicado al presente caso, ello implica que la cancelación solicitada —aun cuando pueda facilitar la inscripción ulterior de otra hipoteca a favor de PenFed— no configura, por sí misma, un negocio jurídico a favor de la cooperativa que active la exención contributiva reclamada.

**La cancelación de hipoteca beneficiaba a los deudores hipotecarios, quienes vendieron el inmueble a los socios de PenFed. A ellos les correspondía asumir los gastos de la cancelación, conforme a la obligación que el Artículo 1287 del Código Civil, *supra*, le impone al vendedor en una compraventa**

---

[16] En el ámbito del Derecho Registral Inmobiliario, "el concepto *rango* se utiliza para designar la posición registral de un derecho real respecto a otros derechos reales, la posición en el orden jerárquico de derechos que recaen sobre un mismo inmueble." L. Rivera Rivera, *Derecho registral inmobiliario puertorriqueño*, 3era ed. rev., San Juan, Ed. Jurídica Editores, 2012, pág. 210.

**de entregar el bien libre de todo gravamen, salvo que se pacte otra cosa.**[17] Tal como expresamos en *Coop. Ahorro Isabela v. Registrador*, *supra*, págs. 520-521, "el propósito de la exención que cobija a las cooperativas es adelantar la inscripción de bienes inmuebles a favor de estas para desarrollar su poder adquisitivo y, consecuentemente, su inserción en el mercado. De manera que concederles a los deudores hipotecarios la [exención], por conducto de la Cooperativa, en nada aporta al objetivo de la Ley de Cooperativas." Equiparar el interés de una cooperativa en asegurar el rango preferente de una hipoteca posterior con un beneficio jurídico directo extiende indebidamente un privilegio contributivo que el legislador no concedió.

Aun cuando PenFed reclamó la exención en su carácter de endosataria del pagaré originalmente emitido a favor de Sun West Mortgage Company, Inc., nada cambia. El texto de la Escritura Núm. 125 revela que dicho endoso fue realizado únicamente para autorizar la cancelación, sin que mediara contraprestación, adquisición de crédito, ni beneficio jurídico alguno. Por ende, interpretar en el presente caso, que un mero endoso, realizado solamente con fines de cancelación, convierte automáticamente a la cooperativa en parte beneficiaria del negocio jurídico, contraviene la norma de interpretación

---

[17] En lo pertinente, el Artículo 1287 del Código Civil, 31 LPRA sec. 9991, establece lo siguiente:

El vendedor está obligado a:
   (a) entregar inmediatamente el bien con sus accesorios, libre de todo gravamen, en el lugar y el tiempo convenidos o donde se encuentre el bien en el momento del otorgamiento;
   [...].

restrictiva que rige en materia contributiva. A su vez, vaciaría de contenido el estándar jurisprudencial vigente.

Por consiguiente, coincidimos con el Registrador en que la cancelación solicitada en este caso no constituye un negocio jurídico a favor de la cooperativa que justifique la dispensa arancelaria reclamada.

Por otra parte, no es posible soslayar que, según se desprende de la *Carta de notificación* emitida en este caso, el Registrador notificó que, según los Artículos 1 y 3 de la Ley Núm. 209-2015 y el Artículo 4.1 del Reglamento General para la Aplicación de la Ley Núm. 209-2015, Reglamento Núm. 8714 de 8 de marzo de 2016, tenía que surgir del documento presentado que la cooperativa asumió el pago de los gastos del negocio jurídico, pues, de lo contrario, no aplicaba la exención. Sin embargo, las disposiciones citadas por el Registrador son inaplicables a las cooperativas porque reglamentan únicamente la exención del pago de aranceles registrales concedida a los gobiernos de los Estados Unidos de América y de Puerto Rico. En ese respecto nada más y sin alterar el resultado de esta Opinión, rechazamos ese fundamento de la falta notificada en la calificación del Registrador.

De igual forma, debemos precisar que, aunque confirmamos al Registrador en lo relativo al cobro de los aranceles registrales, no procede validar su determinación en cuanto al pago de aranceles notariales. Ello, pues el Artículo 1 de la Ley Núm. 114 de 12 de julio de 1960, *supra*, concede a las cooperativas una exención expresa respecto a los derechos

prescritos en la Ley de Arancel Notarial, cuando se trata de contrataciones relacionadas con sus fines institucionales. La escritura de cancelación de hipoteca de autos constituye parte de la contratación realizada entre la cooperativa y sus socios, y por tanto está cobijada dentro de la exención estatutaria. En consecuencia, el cobro de aranceles notariales notificado por el Registrador resulta improcedente.

Sobre ese aspecto, debemos aclarar que, en casos previos, particularmente en *Coop. Ahorro Isabela v. Registrador*, *supra*, y en *Coop. Ahorro San Blas v. Registradora*, *supra*, nuestros dictámenes se habían limitado a pasar juicio sobre el alcance de la exención arancelaria registral a favor de las Cooperativas allí envueltas. En ninguna de esas instancias adjudicamos de manera directa las deficiencias relacionadas al pago de aranceles notariales. Sin embargo, hoy nos expresamos formalmente sobre ese asunto. Al así hacerlo, concluimos que la exención notarial reclamada por la Cooperativa en virtud de la Ley Núm. 114 de 12 de julio de 1960, *supra*, procede que sea concedida. De esta forma, logramos evitar que se valide de manera indirecta un fundamento incorrecto en derecho y se provee mayor certeza normativa al sector cooperativista y notarial.

IV

En mérito de la discusión que antecede, **se confirma parcialmente la calificación del Registrador de la Propiedad.** En específico, confirmamos su determinación en cuanto a la improcedencia de la exención arancelaria registral reclamada por PenFed, pero rechazamos el fundamento de la calificación

que se apoyó en disposiciones legales inaplicables a las cooperativas, así como la exigencia del pago de aranceles notariales, por resultar contraria a la exención dispuesta en la Ley Núm. 114 de 12 de julio de 1960, *supra*.

Se devuelve el caso al Registro de la Propiedad para el trámite correspondiente, conforme con lo aquí resuelto.

Se dictará sentencia en conformidad.


                              Camille Rivera Pérez
                              Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Lcdo. José Luis Riefkohl Soltero, Registrador de la Propiedad, Caguas, Segunda Sección<br><br>Peticionario<br><br>v.<br><br>Pentagon Federal Credit Union<br><br>Recurrida | RG-2024-0003 | |

**SENTENCIA**

En San Juan, Puerto Rico, a 9 de septiembre de 2025.

Por los fundamentos expuestos en la *Opinión* que antecede, la cual se hace formar parte de la presente *Sentencia*, **se confirma parcialmente la calificación del Registrador de la Propiedad.** En específico, confirmamos su determinación en cuanto a la improcedencia de la exención arancelaria registral reclamada por PenFed, pero rechazamos el fundamento de la calificación que se apoyó en disposiciones legales inaplicables a las cooperativas, así como la exigencia del pago de aranceles notariales, por resultar contraria a la exención dispuesta en la Ley Núm. 114 de 12 de julio de 1960, *supra*.

Se devuelve el caso al Registro de la Propiedad para el trámite correspondiente, conforme con lo aquí resuelto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Feliberti Cintrón está conforme en parte y disiente en parte, haciendo constar la expresión siguiente:

> Aunque estoy conforme con lo aquí hoy pautado, respetuosamente disiento de que no se le haya dado efecto prospectivo.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo